DORIS LEWIS, GUARDIAN IN BEHALF OF ALICE LEONA TAFOLIA, NADINE ARLINE TAFOLIA, ET AL., PLAINTIFF, *v.* MID-CENTURY INSURANCE COMPANY, A CORPORATION, DEFENDENT. MID-CENTURY INSURANCE COMPANY, A CORPORATION, THIRD-PARTY PLAINTIFF, *v.* AMERICAN CASUALTY COMPANY, ET AL., THIRD PARTY DEFENDANT.

No. 11428.
Submitted Oct. 14, 1968.
Decided Dec. 9, 1968.
As Modified on Denial of Rehearing
Jan. 10, 1969.
449 P.2d 679.

Jones, Olsen & Christensen, Paul G. Olsen (argued), Billings, for plaintiffs.

Crowley, Kilbourne, Haughey, Hanson & Gallagher, Bruce R. Toole (argued), Billings, Jardine, Stephenson, Blewett & Weaver, John D. Stephenson, Jr. (argued), Great Falls, for defendants.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the opinion of the court.

This is an original proceeding brought pursuant to Rule 1 of the Rules of the Montana Supreme Court wherein the United States District Court has requested this Court to decide certain issues specified in its order of December 15, 1967. The facts of the case may be summarized as follows:

Duane Tafolla had an automobile accident while driving a vehicle owned by Martin Stulc. At the time of the accident Stulc and Duane's wife, Darlene Tafolla, were passengers in the vehicle. Darlene was killed. The six minor children of Duane and Darlene, acting through a guardian, Doris Lewis, the plaintiff herein, recovered a judgment against Duane in the amount of $91,172.55 for the wrongful death of their mother.

At the time of the accident the Stulc vehicle was insured by American Casualty Company with $10,000/$20,000 limits. Duane was insured by Mid-Century Insurance Company in a policy with $25,000/$50,000 limits. American Casualty undertook the defense of the guardian's action, but before trial, and with the consent of Duane, settled with the guardian for $7,500 and abandoned the defense. Duane thereafter defended the case with his own counsel.

The guardian, to whom Duane assigned all of his rights, now seeks to recover from Mid-Century the amount of the judgment plus the attorney's fees for which Duane became obligated in the wrongful death action in the amount of $1,850.

The Mid-Century policy insuring Duane contained an exclusion as follows:

"to the liability for any insured for bodily injury to (a) any member of the same household of such insured except a servant, * * *".

At the time of the accident Duane and Darlene and the children were members of the same household. Mid-Century did not defend the action, did not pay to defend it, and has refused to pay all or any part of the judgment.

After the guardian recovered the judgment in the state court the defendant, Mid-Century, certified to the supervisor of the Motor Vehicle Responsibility Law, on a standard form, SR-21, that Duane was insured on the day of the accident under a policy with limits at least equal to those required by the law.

Unable to execute and recover on the judgment against

Duane, the plaintiff took an assignment from Duane of his rights against Mid-Century, his insurance carrier, and subsequently initiated an action in United States District Court against Mid-Century. Mid-Century then joined American Casualty as third-party defendant contending (1) that it was not liable because of the exclusion in the policy, and (2) that American Casualty would be liable as primary carrier on the Stulc vehicle.

A decision in the case being of importance because it would affect the interpretation of most of the standard form insurance policies in force in Montana and because Rule 1 provided a mechanism whereby some state questions pending in federal court might be answered by this Court, the United States District Court ordered the plaintiff to commence in this Court a declaratory judgment action as prescribed by Rule 1 and stayed all further proceedings in federal court pending a decision by us.

Subsequently we granted plaintiff's application for an order accepting jurisdiction and the United States District Court certified to us five questions which it felt were controlling in the case. We now undertake to answer those five questions.

(1) "Does Section 53-438, R.C.M.1947, prohibit an insurer from inserting exclusions in an insurance policy if those exclusions are not mentioned in the section?"

 No, unless the policy is certified to the supervisor as proof of financial responsibility under the Montana Vehicle Safety Responsibility Act. Absent such certification an insurer may insert exclusions in its policies which are not mentioned in section 53-438.

We previously recognized that "* * * there is a substantial conflict of authority as to whether the requirements of automobile liability insurance policies contained in these acts (i. e., Motor Vehicle Safety Responsibility Acts) apply to all automobile liability policies. See 8 A.L.R.3d 388 for a collection of cases from all jurisdictions." Boldt v. State Farm Mutual Automobile Insurance Co., 151 Mont., 337, 443 P.2d 33

(1968), 25 St.Rep. 432. However, we choose to follow that line of cases that hold that exclusions such as the one in question here are not in contradiction to the statute, so long as the policy has not been certified as proof of financial responsibility under the act.

We have stated in the recent past in Northern Assurance Company v. Truck Insurance Exchange, 151 Mont., 132, 439 P.2d 760, 763 (1968), 25 St. Rep. 254, and in Boldt v. State Farm Mutual, supra, at 36, that "In Montana you are not required to have liability insurance to get a driver's license or to drive. When you are required to btain liability insurance then the requirements of section 53-438 are effective." Also in the Northern Assurance Company case, supra, at 763, we noted that "We find the exclusion is not violative of public policy, no showing having been made that this policy was issued to show proof of financial responsibility." We now reaffirm what we said in those two cases.

The Montana Act, section 53-418, subd. 12, defines proof of financial responsibility as "Proof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of said proof, arising out of the ownership, maintenance or use of a motor vehicle * * *." The "effective date of said proof" is the same as the date of the certification of proof of financial responsibility made to the supervisor. R.C.M.1947, section 53-436.

We have also said that generally speaking proof of financial responsibility is required "(1) if a judgment arising out of liability for damages in an automobile accident is outstanding and unsatisfied (subject to exceptions not pertinent to the instant case), section 53-430; or (2) in case of conviction or forfeiture of bail for certain driving offenses, section 53-434." Boldt v. State Farm Mutual, supra, at 35. Neither of those conditions were present when the two policies in question here were issued so that the mandatory requirements of section 53-438, relating to policies issued as proof of future

financial responsibility under the Act and eliminating policy defenses, never attached. Both of the policies here were simply ordinary ones voluntarily carried by a motorist. For that reason the household exclusion was not contrary to any public policy of Montana.

(2) "Does the provision of the policy 'Terms of this policy which are in conflict with the statutes of the state wherein this policy is issued, are hereby amended to conform to such statutes' in effect incorporate section 53-438 and in effect eliminate the quoted exclusions?"

██ No. Since we have resolved that the exclusion is valid, then there can be no conflict between the policy and the statute; nor can there be any amendment if there is no conflict. It is clear that the policy was intended to comply with any financial responsibility laws; however, the quoted portion above was not the portion that made the policy so comply.

On page 4 of the Mid-Century policy the policy provides "When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for bodily injury liability or property damage liability shall comply with the provisions of such laws to the extent of the coverage and limits of liability required by such law * * *." The policy had not been certified as proof of financial responsibility; instead it must have been voluntarily purchased.

(3) "If Mid-Century had no liability under its policy at the time of the happening of the accident, did it make itself liable by filing a certificate of financial responsibility on form SR-21?"

No. From a reading of briefs by respondent and appellant there is an apparent split of authority on whether filing an SR-21 makes an insurer liable when the insurer was otherwise exempt from liability. The appellant contends that Mid-Century waived defenses available under the policy by filing the SR-21 and is now estopped from relying on such defenses.

We cannot agree with the proposition that Mid-Century waived its defenses under the policy or estopped itself from relying on those defenses. Section 53-436(a), R.C.M.1947, which is applicable here because all parties involved were residents of Montana at the time of the accident, provides "Proof of financial responsibility may be furnished by filing with the supervisor the written certificate of any insurance carrier duly authorized to do business in this state certifying that there is in effect a motor vehicle liability policy for the benefit of the person required to furnish proof of financial responsibility. Such certificate shall give the effective date of such motor vehicle liability policy, which date shall be the same as the effective date of the certificate * * *.''

As noted above under question (1) a certificate of proof must be filed under two circumstances. Neither of those two circumstances were present here so the SR-21 filed was not a certification of responsibility. Also as shown by the second sentence of section 53-436, as quoted, a liability policy is effective only from the date of certification. If certication makes an insurer liable only from, that is, after, the date of certification, we cannot see how the filing of an SR-21 under circumstances that do not make it a certification can impose on the insurer liability retroactively from the date prior to the filing when the insurer was otherwise exempt from liability.

(4) "In any event would defendant be liable for more than the limits specified in the Motor Vehicle Responsibility law?"

We on this Court are not seers and cannot, nor will we attempt to, predict the future. Let it suffice to say that under the usual circumstances when the parties are acting under the terms of the policy when it is still in force and effect

"* * * the rights of the insured and the liability of the insurer must be determined by the intention of the parties as expressed in the policy. * * * The test of the intent of the parties to an automobile insurance policy is the common

understanding of men, and since an insurance policy is a contract designed to furnish protection, it should, if reasonably possible, be construed as to accomplish that objective and not to defeat it." (7 Am.Jur.2d, Automobile Insurance, Section 2, p. 293-294).

■ It is clear that the parties can contract and limit the liability of the insurer; so long as the damages are being paid under the terms of the policy the terms will control. As was said in Communale v. Traders & General Insurance Company, 50 Cal.2d 654, 328 P.2d 198, 201, 68 A.L.R. 2d 883 (1958):

"There is an important difference between the liability of an insurer who performs its obligations and that of an insurer who breaches its contract. The policy limits restrict only the amount the insurer may have to pay in the performance of the contract as compensation to a third person for personal injuries caused by the insured; they do not restrict the damages recoverable by the insured for a breach of contract by the insurer."

In fact our own code provides in section 17-301, R.C.M.1947:

"*Measure of damages for breach of contract.* For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."

Also if a policy were issued for more than the amounts required by the Motor Vehicle Responsibility Law. there is no doubt that the insurer might be held liable for more than the amounts required by law. That is, if an insured were to purchase a policy for $25,000/$50,000/$10,000 in lieu of the $10,000/$20,000/$5,000 policy required by section 53-438(b), then the insured might under the proper set of circumstances be held for more than the statutory requirement. It is also clear that if a policy has been certified under the Motor Vehicle Responsibility Law and grants excess coverage that "With

respect to a policy which grants such excess or additional coverage the term 'motor vehicle liability policy' shall apply only to that part of the coverage which is required by this section." (Section 53-438(g), R.C.M.1947.)

Of course, law other than the Motor Vehicle Responsibility Law would govern such excess or additional coverage, and the insurer's liability would be governed under such law. This assumes, of course, that the parties are acting under a valid, unbreached contract. If there is a breach of contract, then our code section cited above and general contract law will govern the rights of the parties.

(5) "Would a coverage compelled, if it is compelled by the Motor Vehicle Responsibility Law, carry with it a duty to defend an insured who is excluded from coverage by the terms of the policy itself?"

No. No duty to defend arises under or by reason of the Motor Vehicle Responsibility Law. If any duty arises it would be under the terms of the contract, with which, in this matter, we are not concerned.

MR. JUSTICES HASWELL, ADAIR, CASTLES and JOHN CONWAY HARRISON, concur.