Norma E. HERPEL, Plaintiff/Appellant,

v.

FARMERS INSURANCE CO., INC.,
Defendants/Respondents.

No. 57469.

Missouri Court of Appeals,
Eastern District,
Division Four.

July 17, 1990.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 22, 1990.

Application to Transfer Denied
Oct. 16, 1990.

Ernest L. Keathley, Jr., St. Louis, for plaintiff/appellant.

Robert R. Coates, St. Louis, for defendants/respondents.

CARL R. GAERTNER, Judge.

Appellant Norma E. Herpel appeals the trial court's dismissal of her amended petition for vexatious refusal to pay an insurance claim. We affirm.

Gerald R. Herpel, appellant's twenty-five year old grandson, bought a 1986 Mitsubishi Starion on August 18, 1986. Respondent issued an automobile insurance policy, effective on the same day, and listed as the named insured Joan Herpel, Gerald's mother and appellant's daughter-in-law. The policy also listed Mitsubishi Acceptance Corporation as the sole lienholder. Gerald titled the car in his name alone, and indicated Mitsubishi Acceptance Corporation as the sole lienholder.

On or about September 17, 1986, appellant loaned her grandson $17,887.80 in two installments: $17,079.31 to pay off Gerald's loan from Mitsubishi Acceptance Corporation, and $808.49 to pay the Missouri sales tax on the car. On October 13, while driving his 1986 Starion, Gerald collided with a concrete pillar on Interstate 44. The accident killed him and totaled the car.

Pursuant to these events, respondent obtained a copy of the certificate of title for the car. It indicated the lien in favor of Mitsubishi Acceptance Corporation was released on October 13, 1986. Respondent also obtained an appraisal of the Starion, which was valued at $16,800 immediately before the accident. In April, 1987, appellant first notified an employee of respondent concerning her claim. On December 18, 1987, respondent was notified by the attorney for Gerald Herpel's estate that Joan Herpel was the named personal representative. Respondent thereafter issued a check, dated January 12, 1988, to Joan Herpel for $16,600 (the value of the car minus the $200 deductible). Joan Herpel paid appellant $10,500 out of the insurance proceeds.

Appellant filed this action claiming to be a lienholder by virtue of the loan to her grandson and seeking recovery of the actual cash value of the automobile and damages for vexatious refusal to pay pursuant to § 375.420 RSMo.1986. Respondent filed a Motion to Dismiss with exhibits. Appellant filed a Motion for Summary Judgment supported by her affidavit. After discovery, appellant filed an amended petition and respondent renewed its Motion to Dismiss. It appears from the record that this motion was argued and submitted on June 21, 1989. On July 6, 1989, the court issued an order withdrawing the motion from submission because the exhibits allegedly attached to the motion could not be found in the court file. The parties were directed to resubmit the motion "after motions, exhibits and affidavits are filed and identified." Respondent then filed an amended motion to dismiss supported by attached exhibits. This motion was argued, submitted and sustained on October 5, 1989.

The July 6, 1989 order notifying the parties that the court intended to consider exhibits and affidavits has the effect of converting the motion to dismiss into a motion for summary judgment pursuant to Rule 55.27(a). *Big Boys Steel Erection, Inc. v. Hercules Constr. Co.*, 765 S.W.2d 684, 686 (Mo.App.1989); *Hanrahan v. Nashua Corp.*, 752 S.W.2d 878, 881 (Mo.App.1988). An order of summary judgment will be affirmed where the matters submitted to the trial court show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Commerce Bank of Joplin v. Shallenburger*, 766 S.W.2d 764, 768 (Mo.App.1989).

■ Appellant's first point on appeal states the trial court erred because she had established a common law lien against the 1986 Starion, thereby entitling her to the insurance funds, because she loaned Gerald the money to pay off the existing debt he incurred to purchase the car. A common law lien is the right of an artisan who has performed labor or furnished material to improve or repair a chattel at the request of the owner to retain possession of the chattel until he is paid. *State ex rel. Reu-*

*seler Motor Co. v. Klaus*, 263 S.W.2d 71, 72 (Mo.App.1953). Such a lien is enforced by the retention of possession of the chattel by the artisan, and is lost by the voluntary surrender of possession. *Hughes v. Aetna Ins. Co.*, 261 S.W.2d 942, 951 (Mo. 1953). Thus, the essential elements of a common law lien are improvement and possession. *See* Brown, *The Law of Personal Property*, § 13.2 (1975). The loan of money to another to purchase or to pay the indebtedness upon an automobile never in possession of the lender does not give rise to a common law lien.

Moreover, whether or not appellant has a common law lien on the car is irrelevant. The general rule is that where a property owner insures the property for his or her sole protection, a lienholder has no cognizable interest in the insurance policy. *Estes v. Great Am. Ins. Co. of New York*, 112 S.W.2d 153, 157–58 (Mo.App. 1938); *See also* 5 R. Anderson & M. Rhodes, *Couch Cyclopedia of Insurance Law* § 29:173 (2d ed. 1984); 5A J.A. Appleman & J. Appleman, *Insurance Law and Practice* § 3340 (1970). The reasoning is that an insurance contract is a personal contract that does not run with the property. *Estes*, 112 S.W.2d at 157. Therefore, the mere fact one is or may be a lienholder on property covered by insurance, without more, is insufficient to establish a right to insurance proceeds paid out on a claim relating to insured property.

Furthermore, by the very terms of the policy, appellant cannot recover. Insurance policies are contracts, and the rules of contract construction apply. *Automobile Club Inter–Insurance Exch. v. Farmers Ins. Co., Inc.*, 778 S.W.2d 772, 774 (Mo.App.1989). The words of an insurance policy are given their ordinary meanings, *Id.*, unless it is plain that a technical meaning is intended. *Krombach v. Mayflower Ins. Co., Ltd.*, 785 S.W.2d 728, 731 (Mo.App.1990). Ambiguity arises only if the language is susceptible of two interpretations and its meaning is uncertain. *Automobile Club*, 778 S.W.2d at 774.

Here, the policy contains a "loss payable" clause, which provides for payments to lienholders in certain cases. The clause in this contract states: "LOSS PAYABLE PROVISIONS/(Applicable only if the lienholder is named, and no other Automobile loss payable endorsement is attached to the policy)." The *only* lienholder that is named in the policy is Mitsubishi Acceptance Corporation. Appellant's name does not appear anywhere in the policy. By the very terms of the insurance policy itself, appellant has no claim to the funds respondent paid to Joan Herpel. Point denied.

Appellant's second and final point alleges the trial court erred in dismissing her amended petition because it did state a claim for vexatious refusal to pay an insurance claim.

This point need not detain us long. To support a claim of vexatious refusal to pay proceeds of an insurance policy, the insured must show the insurer's refusal to pay is willful and without reasonable cause, as the facts would appear to a reasonable and prudent person. *DeWitt v. American Family Mut. Ins. Co.*, 667 S.W.2d 700, 710 (Mo.banc 1984); *Joachim Savings & Loan Ass'n v. State Farm Fire & Casualty Co.*, 764 S.W.2d 648, 651 (Mo. App.1988). In the case at bar, respondent's refusal to pay appellant was reasonable, as she was not entitled to proceeds either by the express terms of the contract or by law. Point denied.

The judgment is affirmed.

HAMILTON, P.J., and STEPHAN, J., concur.