**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent,**

**v.**

**Sandra Lee ZUMWALT, Nicholas Troy Franklin, Patricia Franklin, and Robert Franklin, Appellants.**

**No. 17196.**

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 10, 1992.

Motion for Rehearing and Transfer Denied March 3, 1992.

Application to Transfer Denied April 21, 1992.

David A. Childers, Lee Ann Miller, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for appellants Sandra Lee Zumwalt, Patricia Franklin, and Robert Franklin.

Mark E. Fitzsimmons, Fitzsimmons, Schroeder & Nelson, P.C., Springfield, for appellant Nicholas Troy Franklin.

Ronald R. Holliger, Boland, McQuain, Block, DeHardt & Rosenbloom, Kansas City, for amicus curiae Missouri Ass'n of Trial Attys.

Warren S. Stafford, Taylor, Stafford, Woody, Cowherd & Clithero, Springfield, for respondent.

CROW, Judge.

State Farm Mutual Automobile Insurance Company ("State Farm") brought this declaratory judgment action against: (1) Sandra Lee Zumwalt ("Sandra"), (2) Robert Franklin ("Robert"), (3) Robert's wife, Patricia Franklin ("Patricia"), and (4) Nicholas Troy Franklin ("Nicholas"), a son of Sandra and Robert. The action was precipitated by a one-vehicle accident November 26, 1987, in which a Nissan automobile owned by Patricia and insured by State Farm was being driven by Nicholas, with Patricia's permission. Corey Glen Franklin ("Corey"), another son of Sandra and Robert, was a passenger in the Nissan. Corey was killed in the accident.

On October 27, 1989, Sandra sued her son, Nicholas, for the wrongful death of her son, Corey. § 537.080, RSMo 1986. We henceforth refer to that case as "Sandra's suit."

The day Sandra's suit was filed, Mark Fitzsimmons, a lawyer representing Nicholas, sent a copy of the petition to State Farm, together with a letter requesting State Farm to tender a defense for Nicholas and indemnify him for any judgment against him, up to the policy limits. Fitzsimmons' letter warned State Farm that Nicholas "will not accept State Farm's defense with the reservation of rights."

State Farm hired a lawyer, James W. Newberry, to represent Nicholas in Sandra's suit. Newberry filed an answer on behalf of Nicholas on November 27, 1989.

By letter dated December 11, 1989, State Farm informed lawyer Fitzsimmons that State Farm had no duty to defend or indemnify Nicholas against Sandra's claim. In support of that proclamation, State Farm cited these provisions from a part of the policy captioned "SECTION I—LIABILITY—COVERAGE A":

**Who Is an Insured**

When we refer to *your car,* ... *insured* means:

1. *you;*

....

4. any other *person* while using such a *car* if its use is within the scope of consent of *you* ...

....

When Coverage A Does Not Apply

....

THERE IS NO COVERAGE:

....

2. FOR ANY *BODILY INJURY* TO:

....

c. ANY *INSURED* OR ANY MEMBER OF AN *INSURED'S* FAMILY RESIDING IN THE *INSURED'S* HOUSEHOLD.

State Farm's letter explained that the above provisions, henceforth referred to as the "household exclusion clause," applied because at the time of the accident (a) Nicholas was driving Patricia's Nissan with her consent, thereby qualifying him as an "insured," and (b) Nicholas and Corey—brothers—were residing with their mother, Sandra, therefore Corey was a member of the insured's (Nicholas') family residing in the latter's household.

State Farm's letter expressed willingness to continue to provide a defense to Nicholas, but warned that by doing so it was not waiving or relinquishing its position "that there is no coverage to [Nicholas] for [Sandra's suit]."

Nicholas refused to accept the defense tendered by State Farm under those terms.

State Farm promptly commenced the instant case, seeking a declaratory judgment that the insurance policy provided no coverage to Nicholas for the claim asserted in Sandra's suit and that State Farm had no duty to defend Nicholas in that suit. Following discovery, State Farm moved for summary judgment, averring there was no factual dispute and Missouri courts had repeatedly upheld household exclusion clauses in automobile liability insurance policies.

The trial court, relying on *American Family Mutual Insurance Company v. Ward*, 789 S.W.2d 791 (Mo. banc 1990), and other authorities, found the household exclusion clause valid and granted State Farm's motion. The trial court declared the insurance policy provided no liability coverage to Nicholas for the claim in Sandra's suit and State Farm had no duty to indemnify or defend Nicholas in that suit.

The four defendants perfected this appeal. Their brief presents two points relied on: (1) State Farm, by initially assuming Nicholas' defense, waived "any policy defense that the loss was not covered," and (2) the household exclusion clause in State Farm's policy is void by reason of The Motor Vehicle Financial Responsibility Law ("the FRL") that took effect July 1, 1987.

While this appeal was pending, the Supreme Court of Missouri decided *Halpin v. American Family Mutual Insurance Company*, 823 S.W.2d 479 (Mo. banc 1992). There, a policy of automobile liability insurance stated coverage did not apply to bodily injury to, among other persons, anyone related to the operator and residing in the operator's household. The Supreme Court held the FRL, C.C.S.H.C.S.S.B. 424, Laws of Missouri 1986, pp. 824–32, effective July 1, 1987, codified as §§ 303.010–.370, RSMo 1986, "effects a partial invalidity" of such clauses.

The opinion explained that § 303.025, RSMo 1986[1] (a part of the 1986 legislation), and § 303.190, RSMo 1986[2] (unchanged by the 1986 legislation) require a contract of liability insurance to provide the coverage specified in § 303.190 so the insured will be in compliance with § 303.025. *Halpin*, 823 S.W.2d at 481.

The opinion declared the plain purpose of the 1986 legislation was to ensure that people injured on the highways may collect damage awards, within limits, against negligent motor vehicle operators, and this protection extends to occupants of the insured

1. Section 303.025 reads:
 1. No owner of a motor vehicle registered in this state shall operate the vehicle, or authorize any other person to operate the vehicle, unless the owner maintains the financial responsibility as required in this section. Furthermore, no person shall operate a motor vehicle owned by another with the knowledge that the owner has not maintained financial responsibility unless such person has financial responsibility which covers his operation of the other's vehicle.
 2. A motor vehicle owner shall maintain his financial responsibility in a manner provided for in section 303.160, or with a motor vehicle liability policy which conforms to the requirements of the laws of this state.
 . . . .
2. Section 303.190 reads:
 . . . .
 2. Such owner's policy of liability insurance:

 (1) Shall designate ... all motor vehicles with respect to which coverage is thereby to be granted; and
 (2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles ... subject to limits, exclusive of interest and costs, with respect to each such motor vehicle, as follows: twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and ten thousand dollars because of injury to or destruction of property of others in any one accident.

vehicle. *Halpin,* 823 S.W.2d at 482. Such purpose, said the opinion, would be incompletely fulfilled if the household exclusion clause were fully enforced. *Id.*

The opinion rejected the notion that because § 303.160, RSMo 1986, provides alternate methods for proving financial responsibility, the FRL is not a compulsory insurance law. *Halpin,* 823 S.W.2d at 481. Observing that the great majority of motor vehicle owners will undertake to maintain financial responsibility by means of motor vehicle liability insurance policies, the opinion stated, "The statute is, for all practical purposes, a compulsory insurance law." *Id.*

■ However, as we understand the opinion, the FRL did not render the household exclusion clause entirely void. Because § 303.190.2 [3] requires motor vehicle liability insurance policies to provide coverage in only the amounts specified therein, insurers and their policyholders are free to make insurance contracts containing household exclusion clauses affecting coverage in excess of the amounts required by § 303.190.2. *Halpin,* 823 S.W.2d at 482–483. The opinion stated § 303.190.7, RSMo 1986,[4] manifests to insureds that they have no basis for expecting coverage in excess of the requirements of § 303.190.2. *Halpin,* 823 S.W.2d at 483.

We are constitutionally controlled by decisions of the Supreme Court of Missouri. Mo.Const. art. V, § 2 (1945); *State v. Wilson,* 795 S.W.2d 590, 591[1] (Mo.App.1990).

■ Here, State Farm's policy was issued August 25, 1987, *after* the effective date of the FRL. We glean from the dissent of Robertson, C.J., in *Halpin* that the policy there was likewise issued after the effective date of the FRL. If that be so, *Halpin* and the instant case are indistin-

guishable. If the policy in *Halpin* was issued *before* the effective date of the FRL and (as held in *Halpin* ) the FRL controlled the policy there, we are certain the Supreme Court of Missouri would hold the FRL applies to State Farm's policy here.

Applying *Halpin,* we hold the household exclusion clause in State Farm's policy is void insofar as it purports to deny coverage in the amounts mandated by § 303.190.2, but valid as to any coverage exceeding those amounts.

■ This ruling does not complete our task. As reported earlier, the defendants' first point avers State Farm waived the household exclusion clause by initially assuming Nicholas' defense. If that contention be meritorious, State Farm must pay any damages for which Nicholas becomes legally liable because of Corey's death, up to the policy limits.[5]

In support of this point, the defendants cite *Mistele v. Ogle,* 293 S.W.2d 330, 334[12] (Mo.1956), where the Supreme Court of Missouri stated that defending an action against an insured with knowledge of noncoverage under a policy of liability insurance without a nonwaiver or reservation of rights agreement precludes the insurer from subsequently setting up the fact and defense. There, counsel hired by the insurer represented the insured some two years before withdrawing. The Supreme Court held the issue of whether the insurer was estopped to deny coverage was for the jury to resolve. *Id.* at 334.

■ Here, the defendants base their first point on waiver, not estoppel. Waiver is founded upon the intentional relinquishment of a known right. *Brown v. State Farm Mutual Automobile Insurance Co.,* 776 S.W.2d 384, 386 (Mo. banc 1989). If waiver is implied from conduct, the conduct

---

3. Footnote 2, *supra.*

4. Section 303.190.7 reads:
 Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage shall not be subject to the provisions of this chapter. With respect

to a policy which grants such excess or additional coverage the term "motor vehicle liability policy" shall apply only to that part of the coverage which is required by this section.

5. An exhibit in the legal file indicates State Farm's policy provides bodily injury liability coverage of $100,000 per person and, subject to that limit, $300,000 per accident.

must clearly and unequivocally show a purpose to relinquish the right. *Id.* at 386–87.

Nicholas' personal lawyer (Fitzsimmons) evidently anticipated from the outset that State Farm would assert the policy did not cover Nicholas for the claim in Sandra's suit. The record contains a letter from State Farm to Sandra's lawyer dated March 3, 1988, stating the policy affords no liability coverage for claims arising from Corey's death. As we have seen, when Sandra's suit was filed Fitzsimmons warned State Farm that Nicholas would not accept a defense with reservation of rights.

Despite that, State Farm hired lawyer Newberry to represent Nicholas in Sandra's suit, and Newberry filed an answer for Nicholas in that suit. However, it is inferable that one purpose in doing so was to prevent a default judgment. Two weeks after the answer was filed, State Farm (in the December 11, 1989, letter) expressed willingness to continue to provide Nicholas a defense, but asserted it was not waiving its position that the policy afforded him no coverage. State Farm had taken that position 21 months earlier (in the March 3, 1988, letter). When Nicholas refused the defense on those terms, State Farm swiftly commenced this action. Soon thereafter, lawyer Newberry withdrew as Nicholas' counsel in Sandra's suit.

We hold State Farm's conduct, considered as a whole, did not clearly and unequivocally demonstrate a purpose to relinquish its right to rely on the household exclusion clause as a basis for denying coverage.

This result does not offend *Mistele.* There, the dispute was whether the vehicle involved in an accident was the vehicle identified in the policy or another vehicle of the same make but different model year. *Mistele* presented no issue about waiver of an exclusion clause. Furthermore, as previously noted, the insurer in *Mistele* provided a defense for two years. *Mistele* is inapposite.

The other two cases relied on by the defendants in support of their first point are too factually dissimilar from the instant case to warrant discussion.

 Here, the trial court, relying on *Hussman v. Government Employees Insurance Co.*, 768 S.W.2d 585 (Mo.App. 1989), ruled State Farm did not waive the household exclusion clause. *Hussman* holds that coverage which is excluded from an insurance contract will not be found to include that exclusion upon the basis of waiver for failure to timely assert the defense. 768 S.W.2d at 587[1], citing *State Farm Mutual Automobile Insurance Co. v. Hartford Accident & Indemnity Co.*, 646 S.W.2d 379, 381 (Mo.App.1983). An insurer is not required to provide coverage where the effect would be that of providing coverage where none exists under the policy's terms. *Hussman*, 768 S.W.2d at 587; *Young v. Ray America, Inc.*, 673 S.W.2d 74, 80 (Mo.App.1984).

*Hussman* and the cases on which it relies are controlling. The trial court was correct in ruling State Farm did not waive the household exclusion clause. Consequently, State Farm's exposure under the bodily injury liability coverage in its policy is limited by *Halpin* to the amounts required by § 303.190.2.[6]

One loose end remains. The declaratory judgment won by State Farm in the trial court provided that State Farm had no duty to defend Nicholas in Sandra's suit. That ruling was obviously based on the premise that the household exclusion clause was valid. What is the effect of *Halpin* on State Farm's duty to defend Nicholas in Sandra's suit?

State Farm's policy, in "**SECTION I—LIABILITY—COVERAGE A,**" reads:

We will:

 1. pay damages which an *insured* becomes legally liable to pay because of:
 a. *bodily injury* to others, and
 b. ....
 caused by accident resulting from the ownership, maintenance or use of *your car;* and

**6.** Footnote 2, *supra.*

2. defend any suit against an *insured* for such damages with attorneys hired and paid by us. We will not defend any suit after we have paid the applicable limit of our liability for the accident which is the basis of the lawsuit.

Neither in the trial court nor here did State Farm seek a declaration regarding its duty to defend Nicholas in Sandra's suit if the household exclusion clause was held partially invalid as to the bodily injury liability coverage. It seems likely that because *Halpin* provides Nicholas $25,000 coverage under State Farm's policy if he becomes legally liable for damages because of Corey's death, State Farm will now want to provide Nicholas a defense in Sandra's suit. If that is State Farm's strategy, there is no reason to judicially determine the effect of *Halpin* on paragraph "2" of State Farm's policy (quoted above).

Inasmuch as this subject was not litigated in the trial court nor briefed here, we decline to address it in this appeal. *Halpin* requires reversal of the trial court's judgment. When the case reaches the trial court on remand, the trial court should allow State Farm and Nicholas a reasonable opportunity to raise, by amended pleading if necessary, the issue of State Farm's duty to defend Nicholas in Sandra's suit in light of *Halpin*. Those parties can evaluate their respective positions and decide what course to pursue.

When that issue is ready for determination, the trial court should enter a new judgment addressing it and declaring State Farm's obligation under the bodily injury liability coverage of its policy in accordance with *Halpin*.

The judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

MAUS, P.J., and SHRUM, J., concur.