**STATE FARM FIRE & CASUALTY CO., Appellant,**

v.

**Eugene C. METCALF and William E. Metcalf, minors, by their Guardian Ad Litem, Daniel P. WADE, and Tom Cline, Personal Representative of the Estate of Lance Lee Metcalf, Deceased, Respondents,**

and

**Mary Blood, Defendant.**

No. 18424.

Missouri Court of Appeals, Southern District, Division One.

Aug. 19, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 9, 1993.

Application to Transfer Denied Oct. 26, 1993.

Noble Leighton, Mountain Grove, Edward W. Mullen, Patrick C. Cena, Deacy and Deacy, Kansas City, for appellant.

Michael J. Patton, Turner, Reid, Duncan, Loomer & Patton, P.C., Springfield, for respondents.

PARRISH, Chief Judge.

State Farm Fire & Casualty Company (State Farm) appeals from a summary judgment that included an award of damages in favor of Eugene C. Metcalf and William E. Metcalf (claimants). The trial court declared that State Farm had issued a policy of automobile insurance that applied to an automobile accident in which Sharon K. Metcalf was killed and that the limits of liability provided by that policy were $25,000 per person, including death, and $50,000 per occurrence. The trial court further found for State Farm on two counts of a counterclaim brought by claimants (Counts I and II) and for claimants on a third count of the counterclaim (Count III). The trial court awarded damages in Count III in the amount of $975,000 "because of State Farm's bad faith refusal to defend and settle ... wrongful death claims against State Farm's insured." This court affirms in part, reverses in part and remands.

Lance Lee Metcalf and Sharon K. Metcalf, claimants' parents, were killed in an automobile accident on May 30, 1990. The automobile in which they were riding, and which was operated by Mr. Metcalf, left a roadway, went down a steep embankment, and came to rest approximately 75 feet away from the roadway. Mr. Metcalf was the named insured in two policies of automobile insurance issued by State Farm.

The following chronology relates to legal proceedings that occurred after the automobile accident:

| Date | Description |
|---|---|
| August 17, 1990 | State Farm filed a petition to require administration for the Estate of Lance Lee Metcalf in order that an action for declaratory judgment could be brought to determine validity of the household exclusion part of State Farm's automobile liability insurance policy. Thomas Cline was appointed personal representative for the Estate of Lance Lee Metcalf. |
| September 12, 1990 | State Farm filed an action seeking declaratory judgment regarding automobile insurance policies that named Lance Lee Metcalf as insured. |
| October 11, 1990 | Claimants filed a wrongful death action against the Estate of Lance Lee Metcalf seeking damages for the death of Sharon K. Metcalf. |
| October 15, 1990 | Thomas Cline, Personal Representative of the Estate of Lance Lee Metcalf, sent a letter to State Farm notifying State Farm that the personal representative had been served with summons and petition in the wrongful death action. The personal representative's letter tendered defense of the suit to State Farm. It also advised State Farm, "The estate *will not* accept any reservation of rights, and demands that the company immediately honor its contractual obligations ... afford coverage for the claims being asserted, and afford the defense required by the policy." |
| November 5, 1990 | State Farm sent letter to personal representative of the Estate of Lance Lee Metcalf notifying the personal representative that State Farm would provide a defense in the wrongful death action, but was reserving the right to deny coverage. |

| Date | Description |
|------|-------------|
| November 6, 1990 | The personal representative of the estate of Lance Lee Metcalf sent a letter to State Farm repeating the notice that had been given by the personal representative's October 15, 1990, letter, that the estate would not accept representation based upon a reservation of rights. |
| December 3, 1990 | Claimants filed a two-count counterclaim in the declaratory judgment action brought by State Farm in which they sought determination in Count I "that the policy or policies of insurance issued by [State Farm] ... provide[d] coverage for the claims for the death of Sharon K. Metcalf;" and determination of the amount of coverage applicable and in Count II, alternatively, "in the event ... the liability provisions of the policy do not apply," that "the uninsured motor vehicle coverage of said policy or policies are applicable." |
| January 8, 1991 | Judgment was entered in the wrongful death action brought against the personal representative of the Estate of Lance Lee Metcalf in favor of claimants in the amount of $1,000,000. |
| June 3, 1991 | Claimants filed an amended answer and counterclaim in the declaratory judgment action brought by State Farm which added Count III in which claimants alleged that they were "judgment creditors of the Estate of Lance Lee Metcalf by reason of a judgment entered in their favor ... in the amount of $1,000,000"; that the judgment was a result of State Farm's refusal "to defend its insured, the estate of Lance Lee Metcalf"; that claimants were assignees of the estate's claim against State Farm for wrongful refusal to defend. |

---

State Farm appeals from the part of the judgment in the declaratory judgment action that granted summary judgment to claimants on Count III of their counterclaim and awarded damages "because of State Farm's bad faith refusal to defend and settle ... wrongful death claims against State Farm's insured."

The following provision was part of the liability section of the applicable insurance policy.

We will:

1. pay damages which an *insured* becomes legally liable to pay because of:

   a. *bodily injury* to others, and

   b. damage to or destruction of property including loss of its use,

caused by accident resulting from the ownership, maintenance or use of *your car*; and

2. defend any suit against an *insured* for such damages with attorneys hired and paid by us. We will not defend any suit after we have paid the applicable limit of our liability for the accident which is the basis of the lawsuit.

The liability section of the policy also included a "household exclusion clause" that provided:

THERE IS NO COVERAGE:

. . . . .

2. FOR ANY *BODILY INJURY* TO:

. . . . .

c. *ANY INSURED* OR ANY MEMBER OF AN *INSURED'S* FAMILY RESIDING IN THE *INSURED'S* HOUSEHOLD.

But for Missouri's Motor Vehicle Financial Responsibility Act (as that act has been construed in *Halpin v. American Family Mut. Ins. Co.*, 823 S.W.2d 479 (Mo. banc 1992),[1] and its progeny), the household exclusion clause in State Farm's policy would have precluded recovery from State Farm based on Mr. Metcalf's negligent operation of his motor vehicle. *See American Family Mut. Ins. Co. v. Ward*, 789 S.W.2d 791, 795–96 (Mo. banc 1990). Lance Lee Metcalf was an insured under State Farm's policy. Sharon K. Metcalf was a member of his family, his wife. They resided in the same household. The injuries that produced Sharon K. Metcalf's death were attributable to Lance Lee Metcalf's negligent operation of his insured vehicle.

*Halpin* held that household exclusion clauses cannot exclude coverage required by Missouri's Motor Vehicle Financial Responsibility Law, §§ 303.010—.370.[2] "[P]ublic policy requires that a contract of liability insurance provide the coverage indicated in *§ 303.190*[3] so that the insured will be in compliance with *§ 303.025*." 823 S.W.2d at 481. However, *Halpin* did not completely eliminate the effectiveness of household exclusion clauses.

[A]s we understand the opinion [in *Halpin*], the FRL [i.e., the Motor Vehicle Financial Responsibility Law] did not render the household exclusion clause entirely void. Because § 303.190.2 requires motor vehicle liability insurance policies to provide coverage in only the amounts specified therein, insurers and their policyholders are free to make insurance contracts containing household exclusion clauses affecting coverage in excess of the amounts required by § 303.190.2.

*State Farm v. Zumwalt*, 825 S.W.2d 906, 909 (Mo.App.1992) (footnote omitted).

By its first point on appeal, State Farm argues that the trial court erred in granting summary judgment as to Count III of the counterclaim because by the language of its policy, State Farm had no duty to defend the wrongful death action. State Farm contends the household exclusion clause rendered the part of the liability coverage that would have otherwise required it to provide a defense inapplicable.

In holding that the Motor Vehicle Financial Responsibility Law did not avoid the household exclusion clause in an automobile liability policy beyond the amounts of coverage mandated by § 303.190.2, the Supreme Court explained:

As *Ward* pointed out, our decisions recognize freedom of contract in liability insurance. *Ward*, 789 S.W.2d at 795. *See Rodriguez v. General Accident Insurance Co.*, 808 S.W.2d 379 (Mo. [banc] 1991); *Hines v. Gov't Employees Ins. Co.*, 656 S.W.2d 262 (Mo. banc 1983); *Cano v. Travelers Ins. Co.*, 656 S.W.2d 266 (Mo. banc 1983). When the contract language is clear, as it is here, exceptions based on public policy must usually find support in necessary implication from statutory provisions. *Cameron Mutual [Ins. Co. v. Madden]*, 533 S.W.2d 538 (Mo. banc 1976). *Section 303.190.7*[4] manifests to insureds

1. The accident in which Sharon K. Metcalf was killed occurred May 30, 1990. The *Halpin* opinion was filed January 28, 1992. State Farm paid the $25,000 policy limit into the court in which the judgment had been entered in the wrongful death case on February 14, 1992.

2. References to statutes are to RSMo 1986. Further, references in this opinion to provisions of chapter 303 refer to sections of the Motor Vehicle Financial Responsibility Law, some provisions of which are printed side by side in bound volume 3 of the 1986 Revised Statutes with repealed sections of The Motor Vehicle Safety Responsibility Law having the same section numbers that were repealed effective July 1, 1987.

3. Section 303.190.2(2) specifies the amount of required liability coverage to be "twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and ten thousand dollars because of injury to or destruction of property of others in any one accident."

4. § 303.190.7 states:

Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a

that they have no basis for expecting coverage in excess of the requirements of § 303.190.2.

*Halpin,* 823 S.W.2d at 483. *Herpel v. Farmers Ins. Co.,* 795 S.W.2d 508, 510 (Mo.App. 1990), previously explained the right of "freedom of contract" in insurance policies:

Insurance policies are contracts, and the rules of contract construction apply. *Automobile Club Inter–Insurance Exch. v. Farmers Ins. Co., Inc.,* 778 S.W.2d 772, 774 (Mo.App.1989). The words of an insurance policy are given their ordinary meanings, *Id.,* unless it is plain that a technical meaning is intended. *Krombach v. Mayflower Ins. Co., Ltd.,* 785 S.W.2d 728, 731 (Mo.App.1990).

Language identical to that in the policy of insurance that is the subject of this appeal was construed in *State Farm Mutual Ins. Co. v. Zumwalt, supra.* This court held "the household exclusion clause ... is void insofar as it purports to deny coverage in the amounts mandated by § 303.190.2, but valid as to any coverage exceeding those amounts." 825 S.W.2d at 909. This court perceives no basis for applying the household exclusion clause differently with respect to its effect on liability coverage for bodily injury and property damage and its effect on an obligation to defend a lawsuit arising from an accident involving an insured person.[5]

One of the circumstances in which the policy proclaims "there is no coverage" is when the person injured was "any *insured* or any member of an *insured's* family residing in the *insured's* household." The policy contains no language that suggests this exclusion applies to State Farm's obligation to pay damages because of bodily injury or property damage, but does not apply to its contractual obligation to defend a lawsuit "for such damages."

State Farm appropriately calls attention to the purpose served by the Motor Vehicle Financial Responsibility Law.

The plain purpose ... is to make sure that people who are injured on the highways may collect damage awards, within limits, against negligent motor vehicle operators.

*Halpin,* 823 S.W.2d at 482. Injured parties are protected, as a matter of public policy, for damages for personal injuries up to $25,-000 per person and $50,000 per accident. A provision in liability coverage that, if enforced, would otherwise defeat that purpose is void. This was the holding in *Halpin.* A provision that denies the requirement for State Farm to defend a claim brought by an injured party does not thwart the statutory protection defined in *Halpin.* The contractual obligation to defend claims for personal injury or property damage is a protection provided the insured, not the person injured. Such an exclusion does not violate public policy. State Farm's household exclusion clause, as it applies to defense of claims for personal injuries, is valid.

The trial court's holding that State Farm had a duty under the terms of its insurance policy to defend the claim for wrongful death of a household member of its insured was an erroneous application of law. State Farm's first point is granted. Having no duty to defend the wrongful death action, State Farm's refusal to do so was warranted.

State Farm further asserts by its fifth point on appeal that the trial court erred in granting summary judgment with respect to Count III of claimants' counterclaim "on a basis of 'bad faith' because the counterclaim failed to allege and the evidence failed to show that [claimants] ever offered to settle ... within the amount of the policy limit or that [State Farm] had the opportunity to settle for such sum, nor was it pleaded or

---

motor vehicle liability policy and such excess or additional coverage shall not be subject to the provisions of this chapter. With respect to a policy which grants such excess or additional coverage the term, "motor vehicle liability policy" shall apply only to that part of the coverage which is required by this section.

5. The Supreme Court of Montana reached the same conclusion in interpreting its Motor Responsibility Law. *See Lewis v. Mid–Century Ins. Co.,* 152 Mont. 328, 449 P.2d 679, 683 (1968).

proved that the insured estate ever made such a demand."

■ *Dyer v. General American Life Ins. Co.,* 541 S.W.2d 702 (Mo.App.1976), states the elements required to recover on a tort claim for bad faith refusal of an insurance company to settle a claim within policy limits.

The elements of the tort appear to be that: (1) the liability insurer has assumed control over negotiation, settlement, and legal proceedings brought against the insured; (2) the insured has demanded that the insurer settle the claim brought against the insured; (3) the insurer refuses to settle the claim within the liability limits of the policy; and (4) in so refusing, the insurer acts in bad faith, rather than negligently.

*Id.* at 704.

State Farm's assertion that Count III of the counterclaim did not allege, and the evidence did not show, that claimants offered to settle within applicable policy limits nor that State Farm had the opportunity to settle for such sum is supported by the record on appeal. Claimants argue, however, that because State Farm had notified the personal representative of the estate of the policy provisions that gave State Farm the exclusive right to determine whether or not settlement should be accomplished, and that State Farm would not assume any liability for the claim that was made, a demand to settle was not required; that such a demand was not necessary "because the law does not require the doing of a useless and futile act." This court finds that argument unpersuasive.

*Landie v. Century Indemnity Co.,* 390 S.W.2d 558 (Mo.App.1965), states that an insurer may be liable for an excess judgment if it acts in bad faith "in refusing to settle [a] claim against its insured within its policy limits when it has a chance to do so." *Id.* at 563. There is no showing that State Farm had an opportunity to settle the claim against the estate within its policy limits. Not having had an opportunity to settle the claim within policy limits, State Farm could not have refused to do so. Claimants were not

"entitled to a judgment as a matter of law." Rule 74.04(c). Point V is well-taken.

The foregoing is dispositive of this appeal. Review of State Farm's remaining points is not required.

The summary judgment that was granted as to Count III of claimants' counterclaim is reversed. In all other respects, the judgment is affirmed. The case is remanded for further proceedings as to Count III of the counterclaim.

CROW, P.J., concurs.

SHRUM, J., concurs in separate opinion filed.

SHRUM, Judge, concurring.

Because of State Farm's Point III relied on, I concur in the result.

In Point III State Farm correctly states that the party seeking a summary judgment has the affirmative burden of demonstrating that no genuine issue of material fact exists. Rule 74.04(c). *See Earl v. State Farm Mut. Auto. Ins. Co.,* 820 S.W.2d 623, 624[1] (Mo. App.1991). State Farm is also correct in observing that the issue purportedly resolved by the trial court's summary judgment, that is, whether or not State Farm acted in bad faith in failing to defend or settle the wrongful death action against its insured, is ordinarily, by its very nature, a fact issue. Thus, in *Ganaway v. Shelter Mut. Ins. Co.,* 795 S.W.2d 554 (Mo.App.1990), Judge Hogan, writing for this court said:

[T]he precedent by which we are bound holds that the existence of "bad faith" is usually a question of fact.... [T]he "good faith" action is an action which involves a state of mind. *Zumwalt* ... 228 S.W.2d at 754. It has been consistently held that cases in which the underlying issue is one of motivation, intent, or some other subjective fact are particularly inappropriate for summary judgment.

*Id.* at 562. *See Moore v. Bentrup,* 840 S.W.2d 295, 298[7] (Mo.App.1992).

State Farm continues its Point III argument by suggesting that here there were

disputed fact issues concerning its state of mind and whether it acted in bad faith, that such fact issues were obviously material, and, therefore, application of the foregoing principles mandate reversal of the summary judgment. Upon reviewing the record, I find merit in State Farm's argument in this regard. In my view the claimants failed to meet their burden of demonstrating the absence of a genuine fact issue with respect to their claim of bad faith on the part of State Farm.

I do not agree, as the claimants argue, that the "intent" or "state of mind" of State Farm was not in dispute. Nor do I agree with their claim that the "bad motive" or "bad faith" of State Farm was conclusively demonstrated by showing that State Farm paid its policy limits into court soon after *Halpin v. American Family Mut. Ins.*, 823 S.W.2d 479 (Mo. banc 1992), was decided. For example, in the record, there is evidence that State Farm, in addition to raising the household exclusion as a defense to coverage, also notified its insured that it declined coverage because of the insured's failure to comply with his duties under the policy, including the duty to cooperate.[1] Believing that a material fact dispute existed, I would hold that summary judgment was not available based upon this record. I would reverse and remand for that reason.

I respectfully disagree with the view of the majority that State Farm had no duty to defend the wrongful death action. I do not believe that *Halpin*, 823 S.W.2d 479, excuses State Farm from its contractual obligation to defend.

The focus of *Halpin* was the "household exclusion clause" commonly found in liability insurance policies. Because of the "plain purpose" of the Motor Vehicle Financial Responsibility Law, §§ 303.010–303.370 RSMo 1986, to require "motor vehicle liability policies to provide coverage coextensive with liability, subject to the statutory limits," the *Halpin* court effected a partial invalidity of the household exclusion clause. *Id.* at 480–482. The "partial invalidity" language in *Halpin* says that household exclusion clauses are invalid only to the extent of the limits required by the Financial Responsibility Law (presently 25/50/10). If the "contract language is clear ... [§] 303.190.7 manifests to insureds that they have no basis for expecting coverage in excess of the requirements of § 303.190.2." *Halpin*, 823 S.W.2d at 483. However, in *Halpin*, as well as in *State Farm v. Zumwalt*, 825 S.W.2d 906 (Mo.App. 1992) (cited by the majority), the "coverage" issue was the dollar limit, not cost of defense.

I believe that the duty to defend here exists because of the policy provisions. In its contract State Farm agrees that it "will ... defend any suit against an *insured* for such damages with attorneys hired and paid by us...." Although the term "such damages" refers, in part, to those "which an *insured* becomes legally liable to pay because of ... *bodily injury* to others," State Farm's household exclusion clause does not exclude coverage for defense. It reads:

> THERE IS NO COVERAGE: ... FOR ANY *BODILY INJURY* TO: ... ANY ... MEMBER OF AN *INSURED'S* FAMILY RESIDING IN THE *INSURED'S* HOUSEHOLD.

The effect of *Halpin* was to cover this insured to the extent of 25,000/50,000/10,000. *Halpin* does not extend coverage above those minimum limits, nor does it require defense coverage. Rather, once the insured was cov-

---

1. On November 8, 1990, Jim Rogers, claims manager for State Farm, wrote to Thomas W. Cline, personal representative of Lance L. Metcalf's estate. After noting Cline's earlier refusal to accept a defense with reservation of rights, Rogers advised:

> "[W]e must consider you as an insured under the policy and subject to the duties of an insured as described in the policy issued to Lance L. Metcalf.

I refer you to [the] policy ... which states ... [t]he insured shall cooperate with us.... The insured shall not, except at his ... costs, voluntarily:
   a. Make any payment <u>or assume any obligation to others</u>; ...
In view of the foregoing, you are hereby notified that State Farm ... *will not assume any liability for any loss* ... sustained as a result of the loss...." (Underlining in original; italics added.)

ered for bodily injury to a member of the insured's household in any amount, the contract stated that State Farm would provide defense coverage.

If State Farm wanted to clearly exclude itself from providing defense coverage for an insured when a claim is made by a household member it could have said so in the exclusion provisions. Not having done so, I believe that State Farm had a duty, based upon contract, to defend this insured.

Finally, I am unconvinced in this case that a demand for payment by the insured is an essential element of an action for bad faith refusal to settle. The bad faith refusal to settle cause of action against an insurance company is not based upon a breach of contract theory nor upon negligence principles; rather, it is an action in tort for the wrong committed by an insurer when it fails to act in good faith in determining whether or not to accept an offer to settle a claim against its insured within the limits of its policy. *Landie v. Century Indemnity Company*, 390 S.W.2d 558, 563 (Mo.App.1965).

Because the cause of action developed in cases where the liability insurer assumed control over negotiation, settlement, and legal proceedings brought against the insurer, e.g., *Zumwalt v. Utilities Ins. Co.*, 360 Mo. 362, 228 S.W.2d 750 (1950); *Dyer v. General American Life Ins. Co.*, 541 S.W.2d 702 (Mo. App.1976), it has been stated—over broadly in my opinion—that a demand for settlement within the policy limits is an element of the cause of action.

I find no authority for the proposition that a demand for settlement is an essential element of this cause of action where the insurer has refused to defend and has denied coverage while at the same time insisting upon the insured's cooperation, including that the insured, *"when asked,* assist [the insurer] in ... [m]aking settlements." By its letter State Farm told its insured that (a) it would not defend the case, (b) it assumed no liability for any loss arising out of the incident, (c) the insured was to cooperate with State Farm and, *"when asked,"* was to assist in making settlements, and (d) the insured was

not, except at his own costs, to voluntarily make any payment or assume any obligation to the claimants. Having given the foregoing instructions to its insured, State Farm should be estopped from relying upon the insured to make a demand that the claim be settled within the policy limits.

In *H & S Motor Freight v. Truck Ins. Exchange*, 540 F.Supp. 766, 769[1] (W.D.Mo. 1982), following an extensive analysis of the issue, Senior Judge John Oliver found himself convinced that a demand for payment by the insured was not an essential element of an action based upon Missouri law for bad faith refusal to settle a claim. *See Ganaway*, 795 S.W.2d at 564. Quoting from Appleman, *Insurance Law & Practice* § 4711, he observed that " 'absence of an offer is only one factor in considering whether an insurer was guilty of bad faith in failing to settle a claim against the insured.' " *H & S Motor Freight*, 540 F.Supp. at 768.

Continuing, Judge Oliver wrote: "And on page 398 of § 4711, Appleman states that 'an insurer may not set up, as a defense to the insured's action ... against the insured, the fact that the insured did not demand acceptance by the insurer of an offer of settlement because the insurer by reserving to itself the right to make settlements was estopped from relying upon the insured to make a demand that the claim be settled within the policy limits." *Id.*

Confining my remarks to this case only, I would apply the analysis made in *H & S Motor Freight*, 540 F.Supp. 766, to hold that the making of a demand by the insured and a rejection of that demand by State Farm was not an essential element of the claimant's case. I believe State Farm was estopped from relying upon the insured to demand that the claim be settled within the policy limits.