**Barbara FRANCIS–NEWELL, Plaintiff–Appellant,**

**v.**

**PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant–Respondent.**

**No. 17865.**

Missouri Court of Appeals, Southern District, Division One.

Dec. 1, 1992.

James E. Corbett, John O. Newman, Corbett & Associates, Springfield, for plaintiff-appellant.

Warren S. Stafford, Kevin M. FitzGerald, Taylor, Stafford, Woody, Cowherd & Clithero, Springfield, for defendant-respondent.

PARRISH, Chief Judge.

Barbara Francis–Newell (appellant) appeals a summary judgment that was entered in favor of Prudential Insurance Company (Prudential) in an action in which appellant sought recovery of damages for the wrongful death of her child, Eleanor Francis. The child's death was the result of injuries sustained in an automobile accident.

Eleanor Francis was a passenger in an automobile that was covered by an automobile insurance policy issued by Prudential. Appellant's claim against Prudential was based upon the uninsured motorist coverage in the policy. The trial court, in entering summary judgment for Prudential, found that the terms of the uninsured motorist coverage did not include the child as an insured; that, therefore, appellant could not recover from Prudential for the wrongful death of Eleanor Francis. This court reverses the summary judgment and remands the case to the trial court.

The issue on appeal is whether Eleanor Francis was an insured under the terms of the uninsured motorist coverage that is a part of the automobile insurance policy issued by Prudential. The policy was issued to Willard and Cheryl Wimmer. It insured

their 1987 Ford Ranger truck. The vehicle was involved in an automobile accident September 13, 1990. Mrs. Wimmer's son, Jason Teems, was operating the vehicle at the time of the accident. Eleanor Francis was a passenger in the Wimmer vehicle. She died as a result of injuries she received in the accident. Eleanor Francis was not related to the Wimmers or to Jason Teems, nor was she a member of the household of either.

At the time of the accident, Jason Teems was giving Eleanor Francis a ride to softball practice. Appellant alleged, in the action she brought against Prudential, that the accident was caused by the negligence of the unknown driver of an unidentified vehicle; that the accident occurred when Jason Teems took actions to avoid the unidentified vehicle; that at the time of the accident, Eleanor Francis was an insured under the uninsured motorist coverage by the automobile insurance policy issued by Prudential.

In contending that Eleanor Francis was not an insured under the terms of the uninsured motorist coverage, Prudential argued that the coverage extended only to resident relatives of the named insureds (the Wimmers) and to other people who were using the vehicle with the Wimmers' permission. Prudential asserted that Eleanor Francis, as a passenger in the vehicle, was not "using" it. Prudential contended that it was necessary for a person to exercise supervisory control over a vehicle in order to be "using" it.

The trial court found that "the decedent was not covered under the uninsured portion of the policy since she did not operate or control the operation of the vehicle." It also determined, as required by Rule 74.-01(b), that there was "no just reason to delay" an entry of a final judgment in favor of Prudential on appellant's claim thereby enabling the summary judgment to be appealed notwithstanding other pending claims in the case.

Whether Eleanor Francis was insured under the terms of Prudential's policy is determined by the policy language. "In any given case, whether or not uninsured motor vehicle insurance is applicable, in the first instance, is a matter of construction of the insurance contract." *Rister v. State Farm Mut. Auto. Ins. Co.*, 668 S.W.2d 132, 134 (Mo.App.1984). As explained in *Giokaris v. Kincaid*, 331 S.W.2d 633, 639–40 (Mo.1960), quoting from *Varble v. Stanley*, 306 S.W.2d 662, 665 (Mo.App.1957):

"[A]n insurance policy, being a contract designated to furnish protection, will, if reasonably possible, be construed so as to accomplish that object and not to defeat it. Hence, if the terms are susceptible of two possible interpretations and there is room for construction, provisions limiting, cutting down, or avoiding liability on the coverage made in the policy are construed most strongly against the insurer."

The uninsured motorist coverage in the policy that Prudential issued identifies "WHO IS INSURED" as:

**You** and a **resident relative** are insured while using **your car** or a substitute **car** covered under this part.

Other people are insured while using **your car** or a substitute **car** covered under this part if **you** give them permission to use it. They must use the **car** in the way **you** intended.

The trial court, in finding that Eleanor Francis was not insured under the terms of the uninsured motorist coverage, relied on *Waltz v. Cameron Mut. Ins. Co.*, 526 S.W.2d 340 (Mo.App.1975). In *Waltz* the uninsured motorist coverage was restricted "to the named insured, the spouse of such insured, and the relatives of either while residents of the same household." 526 S.W.2d at 344. The claimants were a passenger and her husband who were not related to the owner of the insured automobile or his wife. Notwithstanding their failure to come within the definition of who was covered according to the policy language of the uninsured motorist insurance, the claimants in *Waltz* argued that the court should require that the definition of insured be the same with respect to uninsured motorist coverage as it was in provisions applicable to bodily injury and property damage liability. Although not acceding to the claim that the definition must be the

same, the court examined the definition of insured under the liability portion of the policy and concluded that, even if the definition were applicable, the claimants would not prevail. The liability section in the automobile insurance policy in *Waltz* extended coverage to "any person while using the automobile ... with the permission of either [the named insured or such insured's spouse]." *Id.* The court determined that the passenger "was not using the automobile within the meaning ascribed to that term under the liability section." *Id.* It concluded that "to be covered under the liability portion of the policy, [the injured claimant] was required to have or exercise some supervisory control over the automobile in which she was riding, and to be more than a passenger who was simply *occupying* the automobile." *Id.*

In *Waltz*, the discussion about the meaning of the word "use" was directed to the meaning of the word applicable to the liability provisions of the policy. The conclusion that liability coverage for a person's "use" of a motor vehicle extended only to persons having or exercising supervisory control over a vehicle is consistent with the nature of liability coverage—coverage for damages inflicted upon a third party's property or person as a result of an accident involving the insured motor vehicle. Absent a passenger manifesting some manner of control over the automobile in which he or she was riding, the passenger would not be "using" the vehicle so as to be legally responsible for damage inflicted as a result of an accident involving the automobile.

Other states have addressed the meaning of the word "using" in ascertaining whether a passenger is an insured for purposes of uninsured motorist coverage and underinsured motorist coverage. In *Pappas v. Central Nat'l Ins. Group of Omaha*, 400 Mich. 475, 255 N.W.2d 629 (1977), the court held that a provision in the uninsured motorist insurance coverage section of an automobile insurance policy defining "insured" as *"any person while using* with the permission of the named insured ... a motorcycle to which this insurance applies" included a guest passenger. 255 N.W.2d at 632 (emphasis in original). The Michigan

court held that a claimant was using the motorcycle when riding as a guest passenger.

In *Aetna Life & Casualty Co. v. Bulaong*, 218 Conn. 51, 588 A.2d 138 (1991), a claim was made by a person who was injured while riding a motorcycle as a passenger. The claimant sought recovery under the motorcycle owner's uninsured motorist coverage. The motorcycle was stolen. The issue of whether the claimant was "using" the motorcycle arose as a result of a policy exclusion that stated:

> We do not provide Uninsured Motorists Coverage for bodily injury sustained by any person ... 4. Using a vehicle without a reasonable belief that the person is entitled to do so.

588 A.2d at 140 n. 2. The court stated:

> Webster's Third New International Dictionary discloses that one of the principal meanings of the verb "to use" is "to put into action or service: have recourse to or enjoyment of: employ." This meaning is consistent with "using" a vehicle as a passenger. Indeed, we commonly speak of "using" public transportation in precisely that sense; the same can easily be said of private transportation.
>
> Our precedents also buttress this conclusion. We have held that " 'the "use" of an automobile by an individual involves its employment for some purpose or object of the user while its "operation" by him involves his direction and control of its mechanism as its driver for the purpose of propelling it as a vehicle. It is perfectly clear that an automobile is being used by an individual who is traveling in it regardless of whether it is being operated by him or by another.' " ....

"[T]he weight of authority from other jurisdictions supports the proposition that passengers are users of a motor vehicle." *Sears v. Grange Ins. Assn.*, 111 Wash.2d 636, 762 P.2d 1141, 1142 (1988); see *Maryland Casualty Co. v. Marshbank* [226 F.2d 637 (3d Cir.1955)], 639; *BASF Wyandotte Corporation v. Transport Ins. Co.*, 523 F.Supp. 515, 517 (E.D.Mich.1981); *Home Indemnity Co.*

*v. Lively,* 353 F.Supp. 1191, 1193 (W.D.Okla.1972); *Orrill v. Garrett,* 100 Ill.App.2d 194, 197, 241 N.E.2d 1 (1968); *United States Fidelity & Guaranty Co. v. Farm Bureau Mutual Ins. Co.,* 2 Kan.App.2d 580, 582, 584 P.2d 1264 (1978); *Baudin v. Traders & General Ins. Co.,* 201 So.2d 379, 381 (La.1967); *DeJarnette v. Federal Kemper Ins. Co.,* 299 Md. 708, 721–22, 475 A.2d 454 (1984); *Pappas v. Central National Ins. Group,* 400 Mich. 475, 481–82, 255 N.W.2d 629 (1977); *National Union Fire Ins. Co. v. Bruecks,* 179 Neb. 642, 648, 139 N.W.2d 821 (1966); *Indemnity Ins. Co. of North America v. Metropolitan Casualty Ins. Co.,* 33 N.J. 507, 513–14, 166 A.2d 355 (1960); *Hite v. Hartford Accident & Indemnity Co.,* 288 S.C. 616, 344 S.E.2d 173, 175 (S.C.App.1986); *State Farm Mutual Automobile Ins. Co. v. Francis,* 669 S.W.2d 424, 427 (Tex.App.1984); but see *Potomac Ins. Co. v. Ohio Casualty Ins. Co.,* 188 F.Supp. 218, 218 (N.D.Cal. 1960); *Dunlap v. Maryland Casualty Co.,* 242 Ark. 533, 535–37, 414 S.W.2d 397 (1967); *Auto–Owners Ins. Co. v. Jones,* 397 So.2d 317, 319–20 (Fla.App. 1981). The commentators generally agree. " 'Use' is to be given its ordinary meaning. It denotes the employment of the automobile for some purpose of the user." G. Couch, Insurance (2d Ed.) § 45:321. "One may 'use' an automobile without personally operating it, as the term is broader than operation." 6C J. & J. Appleman, Insurance Law and Practice (Buckley Ed.1979) § 4354, p. 63. 588 A.2d at 144–45.

In *Sears v. Grange Ins. Ass'n,* 111 Wash.2d 636, 762 P.2d 1141 (banc 1988), one of the cases cited in *Aetna Life & Casualty Co. v. Bulaong, supra,* the court addressed the question of whether a passenger was covered by the car owner's underinsured motorist coverage. The question presented was "whether a passenger 'uses' a vehicle for purposes of underinsured motorist (UIM) coverage." 762 P.2d at 1141. "Covered person" was defined as "anyone using *your covered auto* with *your* permission." *Id.* The word "using" was not defined in the insurance policy. The court concluded that since "use" was not defined in the policy, it would not be interpreted to have a unique meaning; that the passenger "was using the vehicle as a passenger when her injury occurred." *Id.* at 1142.[1] The court further suggested that a lower court's opinion that was overruled "confuses liability with coverage." *Id.*[2]

For this court to blindly follow the language in *Waltz v. Cameron Mut. Ins. Co., supra,* would result in an unwarranted grafting of requirements that are necessary to find coverage under automobile liability provisions upon separate and distinct requirements for finding coverage under uninsured motorist provisions. Prudential's policy distinctly separates policy provisions that are applicable to liability coverage from those applicable to uninsured motorist coverage. The nature of liability coverage is unlike that of uninsured motorist coverage. Although it may be appropriate to require that a person, in order to be covered by liability insurance, have or exercise some supervisory control over a particular automobile in which he or she is riding, that requirement does not logically follow in order for a passenger to be insured under uninsured motorist coverage.

This court holds that Eleanor Francis was using the Wimmers' automobile for purposes of the uninsured motorist coverage provided by the automobile insurance policy in question. She was using the automobile, as a passenger, for transport to

---

1. The Supreme Court of Washington cited the following cases saying that "the weight of authority ... supports the proposition that passengers are users of a motor vehicle. *See, e.g., DeJarnette v. Federal Kemper Ins. Co.,* 299 Md. 708, 721, 475 A.2d 454 (1984); *State Farm Mut. Auto. Ins. Co. v. Francis,* 669 S.W.2d 424, 427 (Tex.Ct.App.1984); *Orrill v. Garrett,* 100 Ill. App.2d 194, 241 N.E.2d 1 (1968); *National Union Fire Ins. Co. v. Bruecks,* 179 Neb. 642, 139

N.W.2d 821 (1966); *Metcalf v. Hartford Accident & Indem. Co.,* 176 Neb. 468, 126 N.W.2d 471 (1964); *Indemnity Ins. Co. v. Metropolitan Cas. Ins. Co.,* 33 N.J. 507, 513–14, 166 A.2d 355 (1960); *Maryland Cas. Co. v. Marshbank,* 226 F.2d 637 (3d Cir.1955)." 762 P.2d at 1142.

2. The case that *Sears* overruled was *Dobosh v. Rocky Mountain Fire & Casualty Co.,* 43 Wash. App. 467, 717 P.2d 793 (1986).

softball practice. The summary judgment is reversed, and the case is remanded to the trial court for further proceedings.

CROW, P.J., and SHRUM, J., concur