**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Plaintiff–Appellant,**

v.

**Harry CARNEY, Joan Nadler, Angela Gayle Lay, A Minor, Paul Bowden, Personal Representative of the Estate of Richard A. Bowden, Deceased, Thomas & Kathy Reames, Defendants–Respondents.**

No. 62871.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 27, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 8, 1993.

Application to Transfer Denied
Oct. 26, 1993.

Evans & Dixon, Gerre S. Langton, St. Louis, for plaintiff-appellant.

Stephen M. Glassman, Clayton, Charles E. Foehner, II, David Sexton, St. Louis, Michael P. Gunn, Ballwin, for defendants-respondents.

PUDLOWSKI, Judge.

Appellant State Farm Mutual Automobile Insurance Company (State Farm) filed a petition for declaratory judgment to determine its obligations under an automobile insurance policy. On motions for summary judgment, the trial court found that State Farm was obligated under a policy to defend and indemnify Paul Bowden, personal representative of the estate of Richard Bowden, and Thomas and Kathy Reames. State Farm appeals arguing that the trial court erred in determining that the policy required providing defense and indemnification. We affirm.

Thomas and Kathy Reames owned a 1977 AMC Jeep. On July 5, 1986 Thomas Reames gave Richard Bowden permission to drive the Jeep. Thomas was unaware of Richard's specific purpose in driving the Jeep, but thought that Richard was taking it for a ride on the Reames' property. Debra Bowden was riding as a passenger in the Jeep driven by her husband Richard. During this drive, Debra was fatally injured in a one car accident on a rural road in Wayne County, Missouri.

Debra had been living in the same household with and was survived by her husband and two children, Angeline Gayle Lay, fathered by Stephen Lay, and Richard Michael Bowden, the natural son of Richard Bowden. The deceased was also survived by her father Harry Carney, and her mother Joan Nadler.

Two separate suits were filed by these various parties seeking damages. The first suit was filed on behalf of Harry Carney, Joan Nadler, and Richard Michael Bowden against Richard Bowden and Thomas and Kathy Reames and was dismissed without prejudice on May 3, 1991. A wrongful death action was filed on behalf of Angeline Gayle Lay against Richard Bowden on June 24, 1991 and is presently pending.

State Farm filed this declaratory judgment action seeking a determination that it was neither obligated to defend nor indemnify Richard Bowden or Thomas and Kathy Reames on any claims asserted against them because of Debra Bowden's death. During the pendency of this action, Richard Bowden died, so Paul Bowden was substituted as a defendant. Stephen Lay, next friend of Angeline Gayle Lay, also died and was replaced by Joan Nadler. Thus, the defendants in this declaratory judgment action became Harry Carney, Joan Nadler, Angeline Gayle Lay, Richard Michael Bowden, Paul Bowden, and Thomas Reames and Kathy Reames. Count I of State Farm's declaratory judgment petition sought judgment under the Reames' policy, and Count II sought judgment under the Bowden policy.

State Farm had issued identical policies of automobile liability insurance to Thomas and Kathy Reames on their 1977 Jeep, and to Richard Bowden on his 1986 Nissan. In "SECTION I—LIABILITY COVERAGE—A," the policies provide that State Farm will:

1. pay damages which an **insured** becomes legally liable to pay because of:
 a. **bodily injury** to others, . . . caused by accident resulting from the ownership, maintenance or use of **your car;** and

2. defend any suit against an **insured** for such damages with attorneys hired and paid by us . . . .

"Insured" is defined in the policies as follows:
**Who Is an Insured**
When we refer to **your car,** . . . **insured** means:

1. **you;**
2. **your spouse;**
3. the **relatives** of the first **person** named in the declarations;
4. any other **person** while using such a **car** if its use is within the scope of consent of **you** or **your spouse;** and

5. any other **person** or organization liable for the use of such a **car** by one of the above **insureds.**

The "household exclusion" provision states:

THERE IS NO COVERAGE:

2. FOR ANY **BODILY INJURY** TO:

c. ANY **INSURED** OR ANY MEMBER OF AN **INSURED'S** FAMILY RESIDING IN THE **INSURED'S** HOUSEHOLD.

(emphasis in original throughout). State Farm based its position on the identical household exclusion in both policies, which were both in effect at the time of the accident.

State Farm filed a motion for summary judgment asserting that there was no dispute as to any material fact and under the household exclusion neither Paul Bowden, personal representative of the estate of Richard Bowden, nor Thomas and Kathy Reames were entitled to indemnity or a defense for the death of Debra Bowden. Respondent Lay filed a cross-motion for summary judgment arguing that the household exclusion did not apply because Debra Bowden was neither insured under the policy nor a resident of the Reames' household. On October 29, 1992, the trial court entered its order granting Respondent Lay's motion for summary judgment on Count I and denying State Farm's motion for summary judgment on Count I. The trial court found that State Farm was fully obligated to defend and indemnify Paul Bowden, personal representative of the estate of Richard Bowden and Thomas and Kathy Reames, under the Reames' policy, against the claims of Respondents Angela Lay, Harry Carney, Joan Nadler and Richard Bowden for the wrongful death of Debra Bowden. The trial court granted State Farm's motion for summary judgment on Count II, finding that State Farm was not obligated to defend or indemnify Paul Bowden or Thomas and Kathy Reames under the Bowden policy, respecting Respondent's claims. State Farm appeals the trial court's order denying its motion for summary judgment on Count I, regarding the Reames' policy.

■ State Farm argues that the trial court erred in finding State Farm obligated under the terms of the Reames' policy to defend and indemnify Paul Bowden and Thomas and Kathy Reames from Respondent's claims arising out of Debra Bowden's death. State Farm first contends that the undisputed facts show Debra Bowden was "using" the vehicle with Thomas Reames' consent and, therefore, her bodily injury or death is excluded from coverage under the fourth category defining an "insured."

The "use" of an automobile is not defined in the State Farm policy. "Use" has been defined in insurance case law as employment for some purpose or object of the user. *Allstate Ins. Co. v. Hartford Accident & Indem. Co.*, 486 S.W.2d 38, 43 (Mo.App.S.D.1972). In *Waltz v. Cameron Mutual Ins. Co.*, 526 S.W.2d 340, 344 (Mo.App.W.D.1975), the court concluded that under the liability provisions of an insurance policy, coverage for a person's use of a motor vehicle extended only to persons having or exercising supervisory control over a vehicle.

For purposes of uninsured motorist coverage, the definition of use has been broadened to include passengers. *See Francis–Newell v. Prudential Ins.*, 841 S.W.2d 812, 814 (Mo. App.S.D.1992) and cases cited therein. The *Francis–Newell* court, however, noted the definition of use under liability coverage:

The conclusion that liability coverage for a person's "use" of a motor vehicle extended only to persons having or exercising supervisory control over a vehicle is consistent with the nature of liability coverage—coverage for damages inflicted upon a third party's property or person as a result of an accident involving the insured motor vehicle. Absent a passenger manifesting some manner of control over the automobile in which he or she was riding, the passenger would not be "using" the vehicle so as to be legally responsible for damage inflicted as a result of an accident involving the automobile.

841 S.W.2d at 814.

Thomas Reames stated in his deposition that he "gave them permission" and that Richard Bowden took his wife Debra along for a ride. There was no other evidence that

Debra Bowden exercised supervisory control or had a particular purpose for riding along. There was not sufficient evidence that Debra Bowden used the car, such that she would fall within the definition of an insured.

State Farm further contends that Debra Bowden was a member of an insured's, Richard Bowden's, family residing in his household. The household exclusion in the Reames' policy, therefore, specifically excluded coverage for her death. Respondents assert the language of the exclusion gives rise to an ambiguity and should be construed in their favor.

Ambiguous insurance policy provisions will be construed against the insurer. *Behr v. Blue Cross Hospital Services, Inc.,* 715 S.W.2d 251, 255 (Mo. banc 1986). An ambiguity arises when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract. *Rodriguez v. General Accident Ins. Co.,* 808 S.W.2d 379, 382 (Mo. banc 1991).

Missouri courts have often examined household exclusion provisions in automobile insurance policies. *See Shelter Mut. Ins. Co. v. Haney,* 824 S.W.2d 949 (Mo.App.S.D.1992); *State Farm v. Andrews,* 789 S.W.2d 144, 146 (Mo.App.E.D.1990); *Foster v. State Farm,* 750 S.W.2d 494 (Mo.App.W.D.1988); *Tickner v. Union Ins. Co.,* 425 S.W.2d 483 (Mo.App. S.D.1968). The only factually similar case containing the identical household exclusion is *State Farm v. Zumwalt,* 825 S.W.2d 906 (Mo.App.S.D.1992). In *Zumwalt,* a permissive user and his brother were involved in a one vehicle accident in which the brother, riding as a passenger, was killed. The boys' mother brought suit against the driving son and sought recovery under the named insured's policy. State Farm denied coverage to the driver under the identical household exclusion because the deceased brother was a member of the insured's (the permissive user's) household. The trial court found the household exclusion clause valid in favor of State Farm. After discussing the effect and application of the Motor Vehicle Financial Responsibility Law (FRL) on appeal, the *Zumwalt* court held "the household exclusion clause in State Farm's policy is void insofar as it purports to deny coverage in the amounts mandated by § 303.190.2 [FRL], but valid as to any coverage exceeding those amounts." 825 S.W.2d at 909.

Although *Zumwalt* appears to be on point, the *Zumwalt* court, focusing only on the effect of the FRL, never addressed the issue of ambiguity in the language of the household exclusion. The ambiguity of this household exclusion language as it applies to a permissive user is before us for the first time. Furthermore, the instant case is not affected by the FRL because both the policy issuance date and date of the accident were prior to the enactment of the FRL.

The specific phrase asserted to contain the ambiguity is "any insured or any member of **an insured's** family residing in **the insured's** household" (emphasis added). The narrow issue on which this case turns is who is "an insured" and who is "the insured" under the Reames' policy and whether a lay person's reasonable reading of this language is susceptible to indistinctness, uncertainty or dual meaning.

In *Shelter Mut. Ins. Co. v. Brooks,* 693 S.W.2d 810, 812 (Mo. banc 1985), the Supreme Court analyzed the grammatical difference between the indefinite article "an" and the definite article "the." "The article 'the' is a word of specificity as contrasted to the articles 'a' and 'an' which are general in description encompassing any of the class." 693 S.W.2d at 812. Noting the difference in the singular and plural versions of "insured" and the narrow interpretation required by the severability of interest clause, the *Brooks* Court found the exclusion language ambiguous. *Id.*

In this case, although Richard Bowden clearly would be considered "an insured" as a permissive user, there is more than one plausible interpretation of who is "the insured." A specific or narrow reading of "residing in the insured's household" could be limited to the named policyholder's, the Reames' household. The same phrase could also be read as merely modifying "any member of an insured's family." Under this construction, "an insured" and "the insured" would refer to the same person, Richard Bowden. Because the exclusion was drafted indistinctly,

leaves one uncertain about who is covered and was reasonably open to dual interpretations, we find it ambiguous.

 Insurance is designed to furnish, not defeat, protection to the insured, and the insurance company is in the best position to remove ambiguity from the contract. *Krombach v. Mayflower Ins. Co., Ltd.,* 827 S.W.2d 208, 210–11 (Mo. banc 1992). State Farm could have more accurately described who it intended to exclude. *See American Family Mut. Ins. Co. v. Ward,* 789 S.W.2d 791, 792 (Mo. banc 1990) ("residing in the same household with the operator"). The trial court's judgment that State Farm is obligated to defend and indemnify Paul Bowden, personal representative of the estate of Richard Bowden, and Thomas and Kathy Reames, under the Reames' policy, against Respondents' claims is affirmed.

CRANDALL, P.J., concurs.

GRIMM, J., dissents in separate opinion.

GRIMM, Judge.

I respectfully dissent.

The policy language determines the rights and obligations of the parties. Three sections deserve special mention.

First, the Reames' policy states: "Defined words are printed in bold face italics." In this opinion, bold print is used where the policy uses bold face italics.

Second, the policy defines the term "insured." It says **"insured** means:

1. **you;**

2. **your spouse;**

3. the **relatives** of the first **person** named in the declarations;

4. any other **person** while using such a **car** if its use is within the scope of consent of **you** or **your spouse;** and

5. any other **person** or organization liable for the use of such a **car** by one of the above **insureds."**

Third, the policy sets forth when there is no coverage. This policy clause, sometimes referred to as a "household exclusion clause," states "THERE IS NO COVERAGE: ...

2. FOR ANY **BODILY INJURY** TO:

\* \* \* \* \* \*

c. ANY **INSURED** OR ANY MEMBER OF AN **INSURED'S** FAMILY RESIDING IN THE **INSURED'S** HOUSEHOLD."

Applying the policy language from these sections to the facts before us, Richard Bowden is an insured. Thomas Reames was a named insured and he gave Mr. Bowden permission to use the vehicle. Thus, Richard Bowden was an insured by virtue of paragraph 4, "any other **person** while using such a **car** if its use is within the scope of consent of **you.**"

Richard Bowden was driving the vehicle when the accident occurred, fatally injuring his wife Debra. Richard and Debra Bowden were living together in the same household. Under the policy, there is no coverage for bodily injury to "any member of an **insured's** family residing in the **insured's** household." Because Richard was an insured and Debra was both a member of his family and resided in his household, the policy does not provide coverage for her injuries.

The majority frames the issue as "who is 'an insured' and who is 'the insured.'" Majority p. 669. They rely on a discussion of the grammatical difference between "an" and "the" as it modifies "insured" in *Shelter Mut. Ins. Co. v. Brooks,* 693 S.W.2d 810, 812 (Mo. banc 1985). In *Brooks,* apparently the policy did not clearly indicate what was meant by the term "insured." *Id.* As a result, the court was free to distinguish between "the insured" and "an insured."

That freedom does not exist here. Missouri continues to recognize the freedom of contract in automobile liability insurance. *Halpin v. American Family Mut. Ins. Co.,* 823 S.W.2d 479, 483 (Mo. banc 1992).

Here the policy states, "Defined words are printed in bold face italics." In the household exclusion clause, the term **"insured"** is printed in bold face italics. The policy definition of **"insured"** is controlling. A lay person's definition of insured does not apply when, as here, the policy plainly indicates the technical meaning is intended. *See Rodri-*

*quez v. General Accident Ins. Co.*, 808 S.W.2d 379, 382 (Mo. banc 1991).

A court is not permitted to create an ambiguity "in order to enforce a particular construction which it might feel is more appropriate." *Id.* I cannot find "a grammatical ambiguity in the exclusion itself that suggests an interpretation favoring the insured." *Halpin*, 823 S.W.2d at 483. Thus, I cannot affix a meaning to **"insured"** different from that set forth in the policy.

I would reverse the trial court's judgment.