Ryan MARCHAND, by and through his next friend, Patricia MARCHAND, Appellant,

v.

SAFECO INSURANCE COMPANY OF AMERICA, Respondent.

No. ED 75211.

Missouri Court of Appeals, Eastern District, Division Five.

Aug. 10, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 5, 1999.

Terry A. Bond, Clayton, for appellant.

Gary E. Snodgrass and James A. Hansen, St. Louis, for respondent.

KENT E. KAROHL, Judge.

Ryan Marchand (Marchand), by and through his next friend Patricia Marchand, sued Safeco Insurance Company (Safeco), for injuries he sustained as a passenger in an automobile accident. Marchand sued under the uninsured motorist provisions of an automobile policy Safeco issued to his parents. The trial court granted summary judgment for Safeco after finding Marchand was "using" the automobile as a passenger and concluding the Safeco policy excluded coverage for a person "using a vehicle without a reasonable belief that that person has permission to do so." Marchand argues on appeal that the trial court erred in granting Safeco's summary judgment for the following reasons: (1) under the definitions section of the policy and the context in which the word is stated, "use" does not include a passenger; (2) the exclusion, upon which the summary judgment is based, is vague and ambiguous; and (3) the Missouri Motor Vehicle Financial Responsibility Law requires Safeco to cover Marchand as an uninsured motorist; therefore, denying him coverage would violate the uninsured motorist law and is against public policy. We affirm.

On July 7, 1994, Marchand, age 14, was a passenger in the backseat of a car driven by Joseph Pogue (Pogue), age 13. Pogue was taking Marchand to Marchand's home. Pogue had taken the vehicle without permission from his mother, Ann Pogue, who was uninsured at the time. There is no summary judgment evidence to support finding Marchand could have had a reasonable belief that either he or Pogue had permission to operate or use Ann Pogue's vehicle. Marchand, Pogue and four other minors left a friend's house in the car driven by Pogue. Pogue made a left turn on East Concord. He proceeded up a hill, increasing his speed to approximately 75 miles per hour. While still speeding, he made a 90–degree right turn, lost control of the vehicle, slid across the road and struck a utility pole. Marchand was

thrown from the backseat into the windshield and sustained injuries.

At the time of the accident, Joseph and Ann Pogue's vehicle was uninsured. Marchand's parents had an insurance policy in effect at the time of the accident with Safeco. Marchand sued Safeco under the uninsured motorist provisions of the policy. The trial court granted Safeco's motion for summary judgment in which it argued that Marchand's claim was excluded under the policy. Marchand then filed this appeal.

■■■ Our review of a motion for summary judgment is *de novo*. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). As such, we employ the same criteria on appeal in testing the motion as the trial court when it initially reviewed the motion. *Id.* Summary judgment is purely an issue of law. *Id.* We will grant a motion for summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 74.04. We review the record in the light most favorable to the party against whom the judgment was entered. *ITT Commercial Finance Corp.*, 854 S.W.2d at 376. We give the non-movant all reasonable inferences from the record. *Id.*

■■ Safeco alleged in its motion for summary judgment that Marchand is excluded from coverage under the non-permissive use exclusion contained within the uninsured motorist provisions. The policy exclusion states, in pertinent part:

A. We do not provide Uninsured/Underinsured Motorists Coverage for **bodily injury** sustained by any person:

. . . . . .

*4. Using* a vehicle without a reasonable belief that that person has permission to do so (emphasis added).

In his first point on appeal, Marchand argues that "use" does not include a passenger. He contends that "use" refers to operating or driving a motor vehicle. He argues that "use" is not defined in the policy; therefore, we must look to the context in which it is used throughout the policy.

The Southern District of this court considered this issue in *Francis–Newell v. Prudential Ins. Co. of America*, 841 S.W.2d 812 (Mo.App. S.D.1992). In that case, the plaintiff appealed a summary judgment entered in favor of the defendant insurance company in an action to recover for the wrongful death of her child. *Id.* The child was a passenger in a motor vehicle that was covered by an insurance policy provided by Prudential. *Id.* The plaintiff sued Prudential under the uninsured motorist provisions of the policy. *Id.* The policy specifically defined an insured in the uninsured motorist provisions of the policy as: "[y]ou and a resident relative are insured while *using* your car . . . [o]ther people are insured while *using* your car . . . ." *Id.* at 813 (emphasis added). The issue was whether the deceased child was insured under the terms of the policy. *Id.*

In its analysis, the court made a distinction between the liability section and the uninsured motorist section of the policy. *Id.* at 814. The word "use" had wholly different meanings in each section of the policy. *Id.* at 815. Under the liability section, "use" applied "to persons having or exercising supervisory control over a vehicle." *Id.* at 814. However, when considering the uninsured motorist provisions and employing the definition from Webster's Dictionary, the court found "[i]t . . . perfectly clear that an automobile is being used by an individual who is traveling in it regardless of whether it is being operated by him or by another." *Id.* Further, it recognized that in *Sears v. Grange Ins. Ass'n*, 111 Wash.2d 636, 762 P.2d 1141 (Wash. banc 1988), "use" was not defined in an underinsured motorist policy, and, consequently, was not given a unique meaning. *Id.* at 815 *citing Sears v. Grange Ins. Ass'n*, 111 Wash.2d 636, 762 P.2d 1141 (Wash. banc 1988). Thus, the court concluded that the deceased child, as a passenger, was "using" the vehicle for

purposes of coverage under the uninsured motorist provisions. *Id.* at 815.

Here, Marchand argues that the exclusions do not apply to him because a passenger cannot "use" a vehicle. In his argument, he compares the words "use" and "occupying" as they appear throughout the policy. He notes: (1) "occupying" is clearly defined in the policy to include a passenger, and "use" is not defined; and (2) "use" is applied in the policy only in reference to operating or driving a motor vehicle. We hold the *Francis–Newell* case rejects this view. Thus, Marchand was a non-permissive "user" of the vehicle as a passenger and coverage was excluded. Point denied.

■ In his second point, Marchand argues, in the alternative, that the exclusion on which the trial court relied in granting Safeco's summary judgment is unenforceable because it is vague and ambiguous. He contends that the word "use" is subject to two reasonable interpretations because it can be interpreted as meaning "operating or driving a vehicle," or "riding as a passenger." As such, he argues that the policy exclusion should be construed against Safeco.

We must give the contract its plain meaning in interpreting an insurance policy. *American Motorists Ins. Co. v. Moore,* 970 S.W.2d 876, 878 (Mo.App. E.D. 1998). "We cannot distort unambiguous language to create an ambiguity." *Id.* Policy language is ambiguous if there is "duplicity, indistinctness or uncertainty in the meaning," or if it is "reasonably open to different interpretations." *Id.* We construe ambiguous language against the insurer. *Id.*

In *Omaha Property & Cas. Ins. Co. v. Peterson,* 865 S.W.2d 789 (Mo.App. W.D. 1993), a policy issued by Omaha Property and Casualty contained an exclusion in its liability provision which includes "any person ... using a vehicle without a reasonable belief that the person is entitled to do so." *Omaha Property & Cas. Ins. Co. v. Peterson,* 865 S.W.2d 789 (Mo.App. W.D. 1993). The Western District of this court

held that the permissive use exclusion was not ambiguous. *Id.* at 790. The court further stated that this provision was "relatively straightforward:" the plaintiff must have had a belief that she had permission to drive the car, and the belief must have been rational. *Id.*

In *Automobile Club Inter–Ins. Exchange v. Farmers Ins. Co., Inc.,* 778 S.W.2d 772 (Mo.App.1989), we held a clause excluding coverage in a liability policy to "any person ... [u]sing a vehicle without a reasonable belief that the person has the consent of the owner to do so" was not ambiguous. As such, we concluded that we would "neither pervert language nor exercise inventive powers for the purpose of creating an ambiguity when none exists." *Automobile Club Inter–Ins. Exchange,* 778 S.W.2d at 775.

There are no Missouri cases that address whether the permissive use clause of the uninsured motorist section of a policy is vague and ambiguous. We discern no reason to find the same language ambiguous in an uninsured motorist context and unambiguous in a liability context. We are aware of *Gift v. Nationwide Insurance Co.,* No. 97–6934, 1998 WL 164997 (E.D.Pa.), where the United States District Court, Eastern District of Pennsylvania recently decided the issue before us. *Gift v. Nationwide Insurance Co.,* No. 97–6934, 1998 WL 164997 (E.D.Pa.). The plaintiffs in that action sued the defendant insurance company to recover uninsured motorist benefits under a policy issued to them by the defendant. The plaintiffs' son, Christopher Gift, was a passenger in an automobile that was involved in an accident. Gift died as a result of the accident. The automobile belonged to Wilma A. Wareham and was taken without her permission by her grandson. The plaintiffs sought to recover under their uninsured motorist coverage of their insurance policy. The defendant denied coverage on the basis of a non-permissive use exclusion, which provided: "[t]his coverage does not apply to: ... [u]se of any motor vehicle by

an insured without the owner's permission." *Id.* at *1. The plaintiffs argued that the exclusion language was ambiguous. *Id.* The court held this clause was clear and unambiguous and should be given its plain and ordinary meaning. *Id.* at *3.

The permissive use exclusion in the exclusion section of Safeco's uninsured motorist provisions is not ambiguous and we afford the exclusion its plain and ordinary meaning. Point denied.

 In his third point, Marchand argues that Safeco must be held to provide coverage under the uninsured motorist provision of Safeco's insurance policy because of the Motor Vehicle Financial Responsibility Law (MVFRL) and Missouri public policy. Specifically, he argues that under MVFRL, the exclusionary clause violates the uninsured motorist statute and is against public policy.

The Western District of this court analyzed a permissive use exclusion contained within a liability policy for operation of a non-owned vehicle. *State Farm Mut. Auto. Ins. Co. v. Scheel*, 973 S.W.2d 560 (Mo.App. W.D.1998). It narrowed the analysis to two steps: 1) whether the insurer could contract with the insured to exclude liability coverage for operation of a non-owned vehicle where he lacked the owners' consent, without violating Missouri public policy, as expressed in the MVFRL; and 2) if the exclusion is permitted under the MVFRL, then we must decide whether there is evidence to support a finding that permission had been granted, which would invoke coverage under the policy. *Id.* at 565. The court held that the exclusion did not violate the MVFRL.

The MVFRL is contained in section 303.010, *et seq.* RSMo 1994. Section 303.025 RSMo Cum.Supp.1998 states, in pertinent part:

1. No owner of a motor vehicle registered in this state ... shall operate the vehicle, or authorize any other person to operate the vehicle, unless the owner maintains the financial responsibility as required in this section....

2. A motor vehicle owner shall maintain the owner's financial responsibility in a manner provided for in section 303.160, or with a motor vehicle liability policy which conforms to the requirements of the laws of this state.

Owners and operators of vehicles purchase motor vehicle liability policies in order to comply with the MVFRL. *Scheel*, 973 S.W.2d at 564. As it is used in the MVFRL, a motor vehicle liability policy means "an owner's or an operator's policy of liability insurance." *Id.* Public policy dictates that to comply with section 303.025, the liability policy must conform to coverage indicated in section 303.190. *Id.* Section 303.190 provides the minimum coverage of liability insurance. *Id.*

The MVFRL applies to owners and operators of motor vehicles. As such, Safeco is not required to afford Marchand, a passenger, uninsured motorist coverage. The exclusion does not violate the MVFRL or Missouri public policy.

There is a question whether there is evidence to support a summary judgment finding that permission had been granted to invoke coverage under the policy. *Scheel*, 973 S.W.2d at 563. Missouri case law has delineated factors in determining whether a belief as to permission was reasonable:

1) whether the driver had express permission to use [the] vehicle; 2) whether the driver's use of the vehicle exceeded the permission granted; 3) whether the driver was "legally" entitled to drive under the laws of the applicable state; 4) whether the driver had any ownership or possessory right to the vehicle; 5) whether there was some form of relationship between the driver and the insured, or one authorized to act on behalf of the insured, that would have caused the driver to believe that he was entitled to drive the vehicle.

*Omaha Property & Cas. Ins. Co.*, 865 S.W.2d at 791.

Marchand testified in his deposition that he did not have a reasonable belief that either he or Pogue had permission to operate or use the vehicle. Further, Ann Pogue swore in her affidavit that she did not give Pogue or Marchand permission to operate or use the vehicle. There is unopposed evidence to support finding that Marchand did not have permission to operate or use the vehicle.

An insurer may limit the coverage afforded an insured as long as the exclusion does not violate section 379.203 or the public policy behind it. *Id.* The statute is violated when "a policy condition limits uninsured motorist protection as to persons who otherwise qualify as insureds for liability purposes." *Famuliner v. Farmers Ins. Co., Inc.,* 619 S.W.2d 894, 897 (Mo.App.1981).

█ Section 379.203 RSMo 1994 is commonly referred to as the Uninsured Motorist Statute. It provides:

> 1. No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto ... in not less than the limits for bodily injury or death set forth in section 303.030, RSMo, for the protection of *persons insured thereunder* who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.

Section 379.203 RSMo 1994 (emphasis added). "Persons insured thereunder" refers to persons insured under the liability provisions of the policy. *Adams v. Julius,* 719 S.W.2d 94, 96 (Mo.App.1986).

█ The liability provision of the policy provides coverage for "bodily injury or property damage for which any insured becomes legally responsible because of an auto accident." Under Missouri law, Marchand was legally incompetent, as a matter of law, to operate a motor vehicle. *Amador v. Lea's Auto Sales & Leasing,* 916 S.W.2d 845, 854–855 (Mo.App. S.D.1996). He was a minor passenger in the backseat of the vehicle driven by Pogue. He could not be legally responsible to pay any damages for bodily injury or property damage as a backseat passenger in the vehicle involved in the accident. Therefore, he was not an "insured" under the liability provisions of the policy. The exclusion does not violate the Uninsured Motorist statute or the public policy behind it because the statute only applies to an insured. Point denied.

We affirm.

ROBERT G. DOWD, Jr., J. concurs.

CHARLES B. BLACKMAR, Senior Judge, dissents in separate opinion.

CHARLES B. BLACKMAR, Senior Judge, dissenting.

I cannot agree with the result reached in the principal opinion. I do not believe that a passenger in an uninsured automobile is necessarily "using" the automobile, under the terms of the policy now before us. Nor do I believe such a passenger is excluded from uninsured motorist coverage there provided if he cannot demonstrate that he does not have the owner's permission to ride in the car.

Our Supreme Court has taken notice of the realities in the drafting of insurance policies. The insurance company chooses the language of the policy. The overwhelming majority of insurance contracts are effected without any input whatsoever from the insured, and any suggestion for change of language would usually be summarily rejected. The courts have seldom countenanced claims that policy language should be expanded to cover the parties' "expectations," but have insisted that insurance companies express their intentions in clear language. Thus it is often said that policy language shall be strictly construed against the insurer and that, when there is ambiguity, a construction which

favors coverage should be adopted in preference to one which would defeat coverage. *Krombach v. Mayflower Ins. Co., Ltd.,* 785 S.W.2d 728, 731 (Mo.App. E.D. 1990).

Our Supreme Court recently emphasized the rule of strict construction against the insurer in *Martin v. United States Fidelity and Guaranty Co.,* 996 S.W.2d 506, 509 (Mo. banc 1999). The phrase in question was "executive officer." *Id.* The opinion reads as follows:

> Whether an insurance policy is ambiguous is a question of law. An ambiguity exists . . . if it is reasonably open to different constructions. When policy language is ambiguous it must be construed against the insurer.

*Id.* (Footnote citations omitted.)

The Court held that the chief operator of a municipal waste treatment plant was not clearly an "executive officer" of the municipality he served, and so was an insured under the policy. *Id.* at 509–10. When applied to a municipality, the term "executive officer" might be applied only to top officials such as the mayor and department heads; it did not clearly include the official in question. *Id.*

Turning to the present case, it appears the driver of the car was thirteen years old, plaintiff knew that he was thirteen years old, and plaintiff had no reason to believe that the driver of the car had the permission of his mother, the owner of the car. The thirteen-year-old driver undertook to drive the plaintiff and several other youths to their homes. The plaintiff was injured when the driver sped through a curve and hit a tree. The driver's parents had no liability insurance on the vehicle. Unless it can be demonstrated as a matter of law that the plaintiff passenger was "using" the vehicle at the time of the accident, the plaintiff had uninsured motorist coverage under the policy his parents had purchased.

First resort is to the dictionary definition of "use" and "using." The word, in its several forms, is one of the oldest in the English language, and has many applications both as a noun and as a verb. We consider only the use as a verb, which yields the participle "using." This portion of the definition in Webster's International Dictionary, 3d. Edition, occupies approximately 100 lines of small type, and provides myriad definitions with numerous subdivisions. Listed synonyms are "employ, utilize, apply, avail." The question immediately arises as to whether one can properly be said to be "using" a vehicle when having no control over it. Nor can it be said that, in ordinary speech, one would say that he had been "using" a vehicle simply by riding in it. I am not persuaded that the multifarious dictionary definition resolves the case in favor of the insurer.

Nor does the case law make the insurer's case conclusive. The insurer and the principal opinion point to *Francis–Newell v. Prudential Ins. Co.,* 841 S.W.2d 812, 815 (Mo.App. S.D.1992). In *Newell,* the Southern District held that a child who was riding to soccer practice in a car driven by another child's parent was "using" the automobile *so as to come within the coverage of a liability policy. Id.* (Emphasis added.) In the posture of that case, the rule of strict construction would apply in favor of the insured passenger and against the insurer, and so the case is not on point in the present controversy. I would reject the insurer's suggestion that it establishes the definition of "using" for all purposes under Missouri law.

Other Missouri case law supports the plaintiff's position, rather than insurer's. State *Farm Mutual Automobile Ins. Co. v. Carney,* 861 S.W.2d 665, 667 (Mo.App. E.D.1993), finding ambiguity, also pointed to the absence of control by the claimant. It is inconceivable that a drafter of insurance policies, on seeing these cases, would not sense the need for further definition of "using."

A further counting of cases would serve no purpose. It is manifest that respected courts have differed in determining whether a passenger is necessarily "using" the vehicle in which he is riding. The differing definitions demonstrate ambiguity.

It is also proper to resort to other portions of the policy to determine the "vocabulary" of the drafters. The insurer did not consider it necessary to define "use" or "using," but did provide a definition of "occupy," as a collective term including both drivers and passengers. In Part B, indeed, the insurer excluded Excess Medical Payment Coverage "sustained while occupying a vehicle without a reasonable belief that the person has permission to do so." Even though this phrasing is in a different part of the policy, its use there demonstrates that the insurer knows how to exclude coverage of passengers lacking permission if that is its intention. Its failure to do so for Uninsured/Underinsured Coverage suggests that it did not clearly manifest intent to exclude persons in the position of claimant. Had the policy said "using or occupying," this case would not have been necessary.

The insurer has failed in its minimum responsibility of clarity. I would reverse the summary judgment for the defendant and remand the case for further proceedings not inconsistent with the views expressed in this opinion.