# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3261

_____

Hawkeye-Security Insurance Company;    *
The Midwestern Indemnity Company,    *
           *
        Appellees,             *    Appeal from United States
           *    District Court for the Eastern
    v.                     *    District of Missouri.
           *
Donald A. Bunch, Patricia A. Bunch,    *
           *
        Appellants.           *

_____

Submitted: June 14, 2011
Filed: July 7, 2011

_____

Before MURPHY and SMITH, Circuit Judges, and READE,[1] District Judge.

_____

MURPHY, Circuit Judge.

Midwestern Indemnity Company and Hawkeye-Security Insurance Company brought this declaratory judgment action seeking a determination that there was no coverage for an accident involving a company car driven by Daniel Brandt and injuring Donald Bunch. Donald and his wife Patricia were both employed by the insured, The Installers Company (Installers). She had limited permission to drive the company car, but she had asked an intoxicated Brandt to drive her husband on a

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

personal errand in violation of company policies. The case was tried to the district court[2] which ruled in favor of the insurers, and the Bunches appeal. We affirm.

I.

Total Lock & Security, Inc. (Total Lock) and its sister company Installers install commercial locks. Total Lock and Installers maintained insurance policies with Midwestern Indemnity Company (Midwestern) and Hawkeye-Security Insurance Company (Hawkeye) for several vehicles that were used by employees while traveling for business, including the car that was damaged in the present case. Michele Fogerty was the sole owner and president of both companies. Installers employed Donald and Patricia Bunch at the time of the accident. The district court also found that Brandt was an employee of Installers on the date of the accident despite being on leave from work.

Installers had several policies related to company vehicles at the time of the accident. Employees were prohibited from using vehicles for personal reasons except when out of town on business, when returning late at night from an out of town job, or when explicitly authorized. There was to be no driving after drinking, and employees were prohibited from allowing an unauthorized person to drive a company vehicle. While none of these policies were in writing, the district court found that they had been orally communicated and were known by all employees.

Employees did not have free use of company vehicles while at home in St. Louis. In fact Donald Bunch's authority to drive company vehicles had been revoked before the accident because he had failed to disclose a citation for driving while intoxicated when he was hired. After that revocation, only Patricia was permitted to

_____

[2] The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

-2-

drive company vehicles when the couple was issued a company car for a work assignment.

The Bunches had been out of town on a business road trip for seven or eight months before the accident. After they returned to St. Louis late on November 21, 2007, Patricia Bunch had authorization to take a vehicle home, keep it at their residence until after Thanksgiving, and use it to purchase food for the holiday. The Bunches went to the Total Lock office on November 23 to meet with Fogerty. During that meeting Fogerty authorized Patricia to take the company car for required maintenance and to fill it with gas. She instructed Patricia Bunch to leave it parked at the Bunches' home until they left town the following week for their next job. Fogerty testified that she had not authorized personal use of the company car over the weekend and that the Bunches agreed to that restriction. The district court heard conflicting testimony on this point from the Bunches. Patricia Bunch stated that "Fogerty didn't tell [her] anything," but Donald testified that she gave them "permission for full use of that vehicle for all personal reasons." The district court gave little weight to that testimony, however, for it found that neither Bunch seemed "constrained by their oath" and both "appeared willing to say anything to advance" their claims.

On November 26, while the Bunches were still in St. Louis, Patricia Bunch asked Brandt to drive her husband on a personal errand to deliver leftover Thanksgiving food to his mother. Brandt agreed even though he knew that he did not have permission from their employer. He was not working on the day of the accident, no one at the company authorized him to drive the car, and he had been drinking alcohol. Unfortunately Brandt was involved in an accident which left Donald Bunch with severe injuries characterized as "incomplete quadriplegia."

An officer at the accident scene reported that Brandt was obviously intoxicated. At trial a forensic toxicologist testified that Brandt likely had "over seven and one half

beers" in his body at the time of the accident. Patricia Bunch testified that she knew of the company rule against drinking and driving but that she was unaware that Brandt had been drinking. The district court found that Brandt had consumed at least fifteen cans of alcohol on the day of the accident and that the Bunches were aware that Brandt had been drinking.

Total Lock and Installers had a primary insurance policy with Midwestern and an umbrella policy with Hawkeye. The liability policy provided coverage to "[y]ou for any covered 'auto'" and "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow . . . ." "You" referred to the named insureds in the policy which were listed as Total Lock and Installers. There was also underinsured and uninsured motorist coverage, but that coverage did not extend to "[a]nyone using a vehicle without a reasonable belief that the person is entitled to do so."

Midwestern and Hawkeye sought a declaratory judgment that Brandt was not entitled to liability coverage and that Donald Bunch was not entitled to uninsured motorists coverage. The Bunches counterclaimed, seeking a declaration that liability, underinsured, and uninsured coverage existed. After trial the court found that no liability insurance coverage existed because Brandt had not had express or implied permission to use the car and Donald Bunch was not covered by the uninsured and underinsured motorists coverage. The Bunches appeal, asserting that liability coverage exists because Brandt had permission from Patricia Bunch to use the vehicle and that the uninsured and underinsured sections of the policy are ambiguous.

We review a district court's findings of fact in a court trial for clear error and its conclusions of law de novo. Eckert v. Titan Tire Corp., 514 F.3d 801, 804 (8th Cir. 2008). In this diversity action we use Missouri state law to construe insurance policies, and questions about the interpretation of an insurance policy are reviewed de novo. Brake Landscaping & Lawncare, Inc. v. Hawkeye-Sec. Ins. Co. et al., 625 F.3d 1019, 1022 (8th Cir. 2010).

-4-

II.

The first issue raised by the Bunches is whether liability coverage extended to Brandt. The liability policy covers "[a]nyone . . . using with your permission a covered 'auto' . . . " under a section commonly known as an omnibus clause. Such permission may be express or implied. Express permission exists when the named insured or someone with authority "directly and distinctly" gave such permission. Shelter Mut. Ins. Co. v. See et al., 46 S.W.3d 65, 67 (Mo. Ct. App. 2001). Implied permission is derived from facts and circumstances and "may be the result of a common practice or course of conduct whereby the owner acquiesces in the practice of another operating his automobile." Id. It is also possible for a "second permittee" to use the vehicle by either express or implied permission from the named insured. See State Farm Fire & Cas. Co. v. Ricks et al., 902 S.W.2d 323, 325 (Mo. Ct. App. 1995). In making a coverage determination a court "will not add language to a policy," and any ambiguity should be resolved against the insurer. Burns v. Smith et al., 303 S.W.3d 505, 511 (Mo. 2010).

The district court found that Brandt did not have express or implied permission to use the vehicle because he had never received permission from Total Lock or Installers, Patricia Bunch had not been authorized to give him permission, and he had violated company policy against drinking and driving. The Bunches do not dispute that Brandt did not have permission from Total Lock or Installers. Instead, they argue that the district court erred in denying liability coverage because Patricia Bunch had the authority to give permission to Brandt and she did give it.

The Bunches first contend that Patricia Bunch, acting as a "Named Insured," could give permission to Brandt because the policy did not specify who at Total Lock and Installers could grant permission. This argument is unavailing. The policy lists Total Lock and Installers as the named insureds, and permission must come from the named insured "or someone having authority to bind him in that respect." Hanover

-5-

Ins. Co. v. Abchal et al., 375 S.W.2d 605, 609 (Mo. Ct. App. 1964). There was no evidence that Patricia Bunch had authority to bind the company. She therefore could not qualify as a named insured to give Brandt permission to drive the vehicle on behalf of the company.

We are not persuaded that Fogerty's authorization to Patricia Bunch enabled her to give Brandt permission to drive the vehicle as a second permittee. Under Missouri law a second permittee must obtain express or implied permission to use the vehicle from the named insured. U.S. Fidelity & Guar. Co. v. Safeco Ins. Co. of Am. et al., 522 S.W.2d 809, 816 (Mo. 1975). Coverage may in some instances extend to second permittees if the first permittee had unfettered control over the car and the second permittee uses the car in a manner impliedly permitted by the owner. Universal Underwriters Ins. Co. v. Davis et al., 697 S.W.2d 189, 193 (Mo. Ct. App. 1985). Missouri courts have been reluctant to find implied permission for a second permittee in circumstances where the first permittee must obtain permission each time she wants to use the vehicle. St. Paul Ins. Co. v. Carlyle et al., 428 S.W.2d 753, 755-56 (Mo. Ct. App. 1968). If the insured has specifically prohibited a first permittee from allowing someone else to drive the car, there can be no implied use for a second permittee. Ricks et al., 902 S.W.2d at 326.

Patricia Bunch lacked authority to permit Brandt to use the vehicle as a second permittee. The Bunches did not have broad, unrestricted use of the car, and there is no evidence that Total Lock or Installers generally allowed employees to give cars to second permittees. Patricia Bunch was required to ask for permission to use the car on every occasion, as indicated by her specific request to use the car to purchase groceries after returning from their work assignment. Moreover, Fogerty had expressly told the Bunches at the November 23 meeting that they had to keep the vehicle parked at their home after taking it for maintenance and gas.

Internal company rules also indicate that Patricia Bunch did not have authority to allow Brandt to use the vehicle on this occasion. The Bunches suggest that reference to these rules is improper, but whether an individual had permission to use a vehicle under an omnibus clause is always a question of fact. State Farm Mut. Auto. Ins. Co. v. Scheel et al., 973 S.W.2d 560, 567 (Mo. Ct. App. 1998). Missouri courts often review company policies in determining whether permission had been granted. Bituminous Cas. Corp. v. McDowell et al., 107 S.W.3d 327, 332 (Mo. Ct. App. 2003); see United Fire & Cas. Co. v. Tharp et al., 46 S.W.3d 99, 107 (Mo. Ct. App. 2001). Total Lock and Installers did not permit employees to use company vehicles for personal reasons except in limited circumstances. There was to be no drinking and driving, and employees could not give authority to others to drive a company vehicle. The district court found that Patricia Bunch knew that Brandt had been drinking, and she admitted that she knew that his personal use of the vehicle would not have been sanctioned by the company if he had been. We conclude that Patricia Bunch did not have authority to give Brandt permission to drive the vehicle as a second permittee.[3]

The Bunches concede that Brandt did not have express or implied permission from Total Lock or Installers to drive the car, and we conclude that Patricia Bunch lacked the authority to give Brandt permission to use the vehicle as either a named insured or as a second permittee. The district court did not err in concluding that liability coverage did not extend to Brandt.

---

[3] The Bunches nevertheless argue that since that the omnibus clause in this policy does not contain a "scope of permission clause," Patricia was not prohibited from allowing Brandt to drive the vehicle as a second permittee. Missouri courts consider the scope of a driver's permission regardless of whether such a clause is in a policy, however. See Nautilus Ins. Co. v. I-70 Used Cars, Inc. et al., 154 S.W.3d 521, 526-31 (Mo. Ct. App. 2005).

The second argument advanced by the Bunches is that Donald Bunch is entitled to uninsured and underinsured motorist coverage because the policy is ambiguous. The uninsured and underinsured motorists sections cover "[a]nyone . . . 'occupying' a covered 'auto' . . ." and then exclude "[a]nyone using a vehicle without a reasonable belief that the person is entitled to do so."  The parties do not dispute that Donald Bunch was "occupying" the car as a passenger at the time of the accident, but they disagree about the effect of the exclusion.  The Bunches also contend that the policy is ambiguous because it does not define the word "vehicle."  The district court determined that Donald Bunch was not covered by the uninsured and underinsured motorists provisions because he could not have had a reasonable belief that he was entitled to use the car.

The Bunches argue that the policy is ambiguous because it "promises something at one point and takes it away at another . . . ." Burns, 303 S.W.3d at 512 (citation omitted).  They argue that this case is similar to Miller's Classified Ins. Co. v. French et al., 295 S.W.3d 524, 527 (Mo. Ct. App. 2009), where the court found a policy ambiguous because it purported to cover "any person" without defining that term and then excluded certain people from coverage.  The term "any person" was open to two interpretations, either meaning anyone or only referring to those persons not otherwise defined in the policy.  Id.  The Bunches contend that the uninsured and underinsured motorists provisions in this case are similarly ambiguous because the policy did not define the word "anyone" and thus could be read to apply to anyone or to anyone unless such person was excluded by the policy.

Exclusions in insurance contracts are enforceable so long as they are unambiguous. Todd et al. v. Mo. United Sch. Ins. Council, 223 S.W.3d 156, 163 (Mo. 2007).  Exclusions by their very nature set limitations on broader grants of coverage. Missouri courts have routinely held that exclusions like the one at issue here are not

ambiguous. See Haulers Ins. Co. v. Pounds et al., 272 S.W.3d 902, 904 (Mo. Ct. App. 2008); Omaha Prop. & Cas. Ins. Co. v. Peterson et al., 865 S.W.2d 789, 790-91 (Mo. Ct. App. 1993). Miller's Classified does not compel the conclusion that the exclusion is ambiguous. In that case the policy stated that it "did not provide Liability Coverage for any person" and then listed certain activities that would lead to an exclusion without repeating who was being referred to in the exclusions. See 295 S.W.3d at 527. The relevant policy language in the case before our court states that "[a]nyone occupying a covered 'auto'" is insured but the immediately following section excludes "[a]nyone using the vehicle without a reasonable belief that the person is entitled to do so." (emphasis supplied). This policy thus differs from the one in Miller's Classified because here both the grant of coverage section and the exclusion section expressly apply to "anyone." We conclude that the exclusion in the present uninsured and underinsured motorist sections is unambiguous.

The district court properly found that Donald Bunch was excluded from uninsured and underinsured motorist coverage because he lacked a reasonable belief that he was entitled to use the vehicle for personal use at the time of the accident. Whether a person has a reasonable belief that he can use a vehicle is determined by several factors, including whether he had express permission, whether he exceeded the scope of that permission, whether the law prohibited the use, whether he owns the car, and the relationship between the driver and the insured. Marchand v. Safeco Ins. Co. of Am., 2 S.W.3d 826, 830 (Mo. Ct. App. 1999). Donald Bunch did not have a reasonable belief that he was entitled to be a passenger at the time of the accident because the car was being used for a prohibited purpose. Fogerty had explicitly told the Bunches that the vehicle was not to be used over the weekend, and the district court found that Donald Bunch was aware that company policy forbade any use of the car after consuming alcohol.

We are also not persuaded that the lack of a definition of the word "vehicle" in the uninsured and underinsured motorists sections renders them ambiguous. The

Bunches contend that the word vehicle could refer to all covered autos or any vehicle other than a covered auto. An unambiguous term in an insurance policy will be given its "plain meaning and enforced as written . . . ." Lindsay et al. v. Safeco Ins. Co. of Am. et al., 447 F.3d 615, 617 (8th Cir. 2006). Here, there is no indication that the term "vehicle" is ambiguous or that a person reading the policy would not understand that the vehicle referred to in the exclusion would have included the car involved in this accident. The district court did not err in determining that Donald Bunch did not qualify for uninsured or underinsured motorist coverage.

For these reasons we affirm the judgment of the district court.

_____